PORTLAND GOLD MIN. CO. v. FLAHERTY.

(Circuit Court of Appeals, Eighth Circuit. October 14, 1901.)

No. 1,501.

1. EVIDENCE—SUFFICIENCY—INFERENCES FROM FACTS PROVED.

Plaintiff, in an action to recover for an injury received in defendant's mine, alleged that, as he and another employé were climbing up the crossing stulls in an up-raise, the other man, who was above, was overcome by powder smoke, gas, and foul air, and fell, striking plaintiff, and causing him to fall and receive the injury complained of. The evidence showed that the up-raise was impregnated with foul air, the effect of which was to greatly weaken and debilitate any one inhaling it, and that this weakening and debility often came on very suddenly; that the other man was climbing ahead of plaintiff, and was an experienced miner, familiar with climbing stulls in up-raises; that something struck plaintiff, and caused him to fall; and that both men were found immediately after at the foot of the up-raise, one dead, and the other severely injured. *Held*, that it was a reasonable inference from such evidence that the injury resulted from the cause and in the manner alleged, which justified the submission of the question to the jury, and that such inference was sufficient to sustain a verdict so finding, rendered under proper instructions.

2. MASTER AND SERVANT—INJURY OF SERVANT—UNSAFE PLACE TO WORK.

A mining company violated its duty in respect to providing its employés with a reasonably safe place in which to work, where, through its foreman, it directed employés to go into an up-raise known to be filled with gas and foul air, and is liable for an injury resulting from the effect of such foul air to a workman who was not guilty of contributory negligence.

3. SAME—CONTRIBUTORY NEGLIGENCE.

Plaintiff, who was inexperienced in mining, was employed by defendant as a "trammer," to load and unload and wheel away dirt and rock

in its mine. When he had been working in the mine three days, he was sent, with another workman, into an up-raise, known by the foreman to be filled with gas and foul air, to clear away dirt and rock. While climbing up, the other workman was overcome by the foul air, and fell, causing plaintiff to fall and receive severe injury. Plaintiff had been in the up-raise the day before, and knew that the air was bad, but also that there was a ventilating apparatus, which, when properly operated, clarified it so that it was not dangerous to work there. *Held,* that such facts shown by the evidence were sufficient to support a finding by a jury that plaintiff was not guilty of contributory negligence in obeying the orders of the foreman to go into the up-raise.

**4. APPEAL—REVIEW—HARMLESS ERROR.**

A statement in the charge, in an action by a servant for a personal injury, that "it was the defendant's duty to use ordinary care to furnish the plaintiff a safe place in which to work," while technically inaccurate, because it failed to limit the requirement to a "reasonably" safe place, did not constitute prejudicial error, where it was so explained by the context that the jury could not have been misled, and especially where defendant practically admitted that the place where plaintiff received his injury was not reasonably safe, and denied having sent him there for that reason.

**5. SAME—WAIVER OF ERROR—REMARKS OF COUNSEL.**

Counsel cannot necessitate a new trial by their own failure to interpose seasonable objection to remarks of adverse counsel; and where, on the first objection, the court excluded the objectionable remarks from the consideration of the jury, there was no reversible error.

**6. SAME—ADMISSION OF EVIDENCE—HARMLESS ERROR.**

It is harmless error to permit a question to be answered which calls for the conclusion of the witness, where the conclusion stated was conclusively established by other evidence introduced by the adverse party.

**7. MASTER AND SERVANT—KNOWLEDGE OF DANGERS OF EMPLOYMENT—REPRESENTATIONS BY SERVANT.**

A statement by an employé, when he was hired, that he was a miner, will not impute to him knowledge of dangers in a mine arising from the gross negligence of the master, but only those of a mine conducted with ordinary care and prudence.

In Error to the Circuit Court of the United States for the District of Colorado.

This action was instituted by Anthony Flaherty, the defendant in error, against the Portland Gold Mining Company, plaintiff in error, to recover damages for injuries alleged to have been sustained by him while engaged in its service. The particular charge is that the defendant directed plaintiff to go up a certain up-raise, called the Four Queens up-raise, rising from the fourth level of its mine, to clear off rock and dirt which had fallen upon the lagging and stulls, at a time when the up-raise, by reason of an accumulation of powder smoke, gas, and foul air, was not a reasonably safe place, or in a reasonably safe condition, for any one to work in. It is alleged that one Harrington, another employé of defendant company, was directed to accompany the plaintiff, and that Harrington made the ascent, climbing up the crossing stulls in the up-raise, a little in advance of plaintiff, and that, when they had reached a point about 100 feet above the level from which they started, Harrington, suddenly overcome by the powder smoke, gas, and foul air, fell, and in falling struck plaintiff, and caused him to fall to the bottom of the up-raise, and to be greatly injured. Two defenses are interposed: (1) A general denial; (2) contributory negligence. There was a verdict and judgment for plaintiff, from which defendant prosecuted a writ of error to this court.

James L. Blair (James A. Seddon and Robert A. Holland, Jr., on the brief), for plaintiff in error.

R. S. Morrison (Scott Ashton, on the brief), for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and ADAMS, District Judge.

ADAMS, District Judge, after stating the case as above, delivered the opinion of the court.

The first assignment of error is that the trial court erred in not directing a verdict in favor of the defendant. Learned counsel for defendant contend that such direction should have been given for two reasons: (1) Because there is no evidence that any negligence on the part of the defendant caused the injury to plaintiff; (2) because plaintiff assumed all risk attending and doing the work required of him.

In support of the first proposition, it is earnestly contended that no evidence is found in the record tending to show either that Harrington was overcome by powder smoke, gas, or foul air, or that plaintiff was struck by the falling body of Harrington, and thereby precipitated to the bottom, in the particular way and manner charged in the complaint; that, on the other hand, the verdict was based solely upon an unwarrantable conjecture by the jury without any substantial evidence to support it. If such were the case, it may readily be conceded that the verdict cannot be sustained.

The trial court, after having directed the attention of the jury to the particular negligent acts alleged in the complaint, charged as follows:

"The plaintiff has based his case on that state of facts in his pleading, and he is held to prove those facts. If he was injured in any other way, if Harrington was not overcome by powder smoke, gas, or fell (when the plaintiff fell) from some other means, and in his fall carried the plaintiff down, the plaintiff cannot recover. If Harrington did not strike the plaintiff at all, and did not cause the plaintiff to fall, the plaintiff cannot recover. That would be permitting the plaintiff to recover on a case he had not made; that he had not warned the defendant to meet."

From the foregoing it appears that the issue was clearly presented to the jury, and its verdict is responsive, to the effect that Harrington was overcome by powder smoke, gas, or foul air, and that as a consequence he fell, and in his fall struck plaintiff, and precipitated him to the bottom of the up-raise.

Is there any substantial evidence to support these findings? We do not mean direct evidence of a participant in the unfortunate event, or of an eyewitness necessarily, but is there any substantial evidence of any kind? Fair and reasonable inferences, drawn from facts and circumstances established by the proof, are always competent evidence, and, indeed, in many cases of disputed fact, furnish the most satisfactory solution. The record now before us, in our opinion, presents just such a case. There is abundant evidence that the up-raise in question was on June 8, 1899, when plaintiff was injured, impregnated with foul air, that its effect was to greatly weaken and debilitate any one inhaling it, and that this weakening and debility often came on very suddenly. In fact, the defendant's own witnesses satisfactorily prove that the air in the up-raise was so impure and deleterious that two men had been overcome by it on the morning of June 8th, just before plaintiff made the

ascent; that they became sick and unable to work longer; and that defendant company then concluded to do no more work on the up-raise until a certain drift could be completed so as to introduce air into it. On the question whether Harrington fell as a result of the impure air, as charged in plaintiff's complaint, the jury had before it the foregoing facts, well established by satisfactory evidence. The jury also had before it the undisputed fact that Harrington was an old and experienced miner, and probably so familiar with climbing up the stulls of up-raises as to be reasonably sure-footed and secure. From these facts the inference is not only permissible, but, in our opinion, altogether reasonable, that Harrington fell as a direct result of the weakening effect of the very bad and impure air of the up-raise. The jury was therefore fully warranted in finding, in response to the issue submitted to it by the court, that Harrington's fall was occasioned by the impure air in the up-raise, as alleged in the complaint.

We are also of opinion that the record shows sufficient evidence from which the jury could reasonably infer that plaintiff was struck by the falling body of Harrington, and thereby precipitated to the bottom. The undisputed facts disclosed in the proof on this point are that Harrington, in making the ascent, was necessarily immediately above the plaintiff, and five or six feet only in advance of him; that Harrington fell; that something struck plaintiff; and that the two men were found immediately thereafter at the bottom of the up-raise, Harrington dead, and plaintiff severely injured.

A fair inference to be drawn from these facts, in the absence of any evidence showing any other cause for plaintiff's fall, is that he was struck by Harrington's body, and thereby caused to fall to the bottom of the up-raise. We cannot agree with counsel for defendant that there is any ground for a reasonable inference that Harrington fell as a result of insecure footing or slipping on the stulls, or that plaintiff's fall was occasioned by the dropping of rock upon him. It would certainly be altogether conjectural to say that Harrington fell either as a result of slipping or insecure footing, or that some stone fell and hit the plaintiff, and caused him to drop to the bottom of the up-raise. There is no evidence tending to show that Harrington slipped, or that any stone fell, and therefore no ground to warrant an inference that plaintiff was injured thereby; whereas there are facts, fully established in evidence, that justify the inference that plaintiff fell as charged in the complaint.

The evidence, as already pointed out, substantially shows that the defendant did not provide a reasonably safe place for its servants to work in. Indeed, this is practically conceded. The stress of the defense is that the mining company did not direct plaintiff and Harrington to go into the up-raise to clear off the rock and dirt at all, but did direct them to go to the bottom of the up-raise, and take up and wheel away a large quantity of dirt, which in the progress of the recent drilling above had fallen and collected there. Ray, the foreman, gave the directions in the presence and hearing of De Camp, the superintendent of the company. Both his and De Camp's version is that the men were directed to go to the foot of

the up-raise, and take up and wheel away the dirt, and were cautioned under no circumstances to go aloft, because of the presence of bad air in the up-raise.

The fact fully recognized by them, that the up-raise was filled with bad air, was a reason assigned by them for confining the work to be done by the plaintiff and Harrington to wheeling away the dirt from the bottom. Plaintiff and several other witnesses testified positively that the foreman directed plaintiff and Harrington to go up the up-raise, and clean off the stulls and lagging, from the top to the bottom. The jury, under proper instructions, found this controverted issue in favor of the plaintiff. We are bound, therefore, to conclude from defendant's own evidence, not only that the place into which plaintiff was sent to work was a dangerous and unsafe place, but that defendant well knew it to be so, and we are bound to conclude from the verdict that the defendant ordered the plaintiff to do work in this dangerous place. It follows that in doing so the defendant did a wrongful and negligent act.

It is next contended that the court erred in not directing a verdict for defendant because the evidence conclusively shows that plaintiff well knew the dangerous condition of the up-raise, voluntarily entered upon the work there, and cannot recover for any injury sustained by him. We cannot agree to this proposition. It is undoubtedly true, and so axiomatic that it needs no citation of authorities to support it, that when a servant of mature understanding voluntarily and knowingly conforms to the direction of his master to perform work in a place rendered dangerous by the negligence of the master, and when the servant is fully aware of all the facts and circumstances constituting the danger occasioned by the negligence of the master, he himself is guilty of negligence contributing to any injury he may sustain while engaged in such work, and cannot recover from the master for such injury.

A brief reference to the admitted facts of the case, in our opinion, fails to bring the plaintiff within the principle just announced. The record shows that he was a man inexperienced in mining. The manner of giving his testimony indicates that he was an ignorant man. He was hired by the defendant only three days before the injury, and was hired, as Superintendent De Camp admits, to do the work of tramming; that is, simply to load and unload dirt and rock and wheel them away. This is the humblest kind of labor. He never had worked in a mine before. There is no evidence that he had any knowledge of underground mining operations, or any familiarity whatever with the properties or laws governing the action and effect of powder smoke, gas, or bad air, or any familiarity with the necessity for or manner of ventilating the mines. On the contrary, his inexperience and humble employment would tend to prove the contrary. It is true the evidence discloses that plaintiff on the day before his injury went up the up-raise to help Ferrens, another employé, to set up a machine for drilling purposes, and that he then noticed bad air, but he says: "It come all right after Ferrens [who was familiar with handling the machine and with the operation of compressed air] turned the air holes loose." It is also

true that plaintiff testified that, when he and Harrington got to the fourth level at the bottom of the up-raise, they sat around a little while, and that Harrington went up part way, and returned, saying: "It seemed a mean place to work up there; * * * that the air seemed bad." The evidence shows that they then waited about 15 or 20 minutes before undertaking to make the ascent, "to see," as plaintiff says, "if the place would clear up." Plaintiff testified that, as he was making the ascent, the air did not seem quite as bad as it was the day before. This, and evidence like this, is all the defendant relies upon to conclusively establish plaintiff's contributory negligence. The evidence shows that the mine was fully equipped with a circulatory system, consisting of a compressor at the top, with connecting air pipes going down to the lower levels of the mine, and back around to the fourth level, to reach the Four Queens up-raise, and that it extended to the top of that up-raise, with adjustable openings near the top and bottom, so as, when properly operated, to force the foul air down and clarify the up-raise. This was operated by a man in charge of the compressor at the top, and subject to the control of an experienced miner, and possibly others who might be familiar with its mechanism and operation in the Four Queens up-raise. Plaintiff, knowing, at least, as he says, that the proper operation of the air holes would clarify the up-raise, might reasonably expect that the men in control would do their duty, and operate the system so as to clarify the up-raise into which he had been ordered to work. He waited 15 or 20 minutes, expecting, doubtless, that the men in control would discharge their obvious duty.

In the light of these facts and others hereinbefore pointed out, we cannot say that the record conclusively shows that plaintiff had such knowledge of the facts and circumstances constituting danger and of the danger itself as to make him guilty of contributory negligence in entering upon the work as directed by the defendant. It is, in our opinion, an extremely conservative view to say that the facts and circumstances of the case render his knowledge of the danger uncertain and debatable. The issue was for the jury, and, after full and clear instruction by the court, it found against the defendant on the same. There being substantial evidence to support this finding, we cannot interfere with it.

Defendant next complains of the following portion of the court's charge to the jury, namely: "It was the defendant's duty to use ordinary care to furnish the plaintiff a safe place in which to work, so as not unreasonably to expose him to unnecessary danger in the doing of his work." Counsel contend that the court should have qualified the word "safe" as here employed by the adverb "reasonably," and, not having done so, it imposed the duty on the defendant of making the place absolutely safe, instead of reasonably safe, as the law only requires. Undoubtedly the criticism, technically speaking, is correct; but is this technical inaccuracy misleading? Does it affect the substantial merits of the case?

The court told the jury that the obligation resting on defendant was "to use ordinary care" to furnish a safe place so as not "un-

reasonably" to expose him to unnecessary danger. The liability of the defendant is here so carefully qualified by expressions denoting the requisite care that it is hardly conceivable that the jury could have been misled by the verbal omission. Moreover, the vice, if it be one, was cured by the immediately following context, namely: "This duty to use ordinary care, generally, is not equivalent to insurance. The defendant was in no sense an insurer of plaintiff's safety. Defendant had to use that care that a reasonably prudent man would use under similar circumstances." The charge, as a whole, on this point was, in our opinion, substantially correct.

Not only so, but the error, if any, was immaterial and unprejudicial. It already appears that defendant practically admitted at the trial that it did not furnish plaintiff a reasonably safe place to work in. As already observed, defendant made no issue of that kind, but contended that it never ordered plaintiff to work in the upraise, for the very reason that it was so filled with bad air as to be dangerous.

. Defendant next contends that the verdict should be set aside and the cause remanded for another trial because of alleged misconduct of plaintiff's counsel in his closing argument in commenting upon the practice of taking affidavits of witnesses before the trial, and their influence upon the witnesses' testimony at the trial. Mr. Sausman, a witness for defendant, testified on cross-examination that he had made an affidavit with reference to the accident in question, and that the man who took his affidavit was in the employ of a guaranty and accident insurance company. In his closing argument counsel for plaintiff said:

"So soon as an accident happens, the man is turned over to the insurance department, and the way they do is this: They call up the men, every one that knows anything about it, and take affidavits not only before their attorney, but before the attorney of the insurance company, which steps into the shoes of the mining company. These affidavits are kept in store, and when you have a case ready for trial they turn to their witnesses, and are able to read them all those portions that are favorable, and can keep quiet all those portions that are not favorable; * * * and so this man, when this accident is referred to, has a mere reminiscence. All his life he pays for it, and we say the insurance company in this case should pay for that."

Counsel for defendant, so far as we can see from the record, waited until the close of the argument, when he said:

"I submit there is no evidence of insurance in this case. I object and except to this all through this argument. I except to all these references counsel has been making in his argument, with reference to insurance and insurance men, because there is no evidence in the case, and it has been expressly overruled, under objection, by the court."

Counsel for plaintiff responded:

"It has come out in the evidence that the affidavits to which I refer were taken before the agents of this insurance company."

Thereupon the court said:

"I do not care to hear arguments on that. I will exclude it from the jury. The argument is improper, even if the subject inadvertently came out in the evidence."

It may be conceded that this argument of counsel was improper, because it was not based upon any substantial evidence material to the cause; but what is to be done? Counsel for defendant, instead of seasonably interposing their objection, allowed the remarks to be made, and after the conclusion of the argument, as already seen, objected, and excepted to all the references which had been made to the subject throughout the lengthy argument. Counsel cannot necessitate a new trial by their own failure to interpose seasonable objections to remarks of adverse counsel. Argument in all cases should be confined to a legitimate discussion of the issues in the case on the evidence before the court, and it is the duty of the trial court in all cases, upon suggestion of unwarrantable departure, to immediately confine counsel to legitimate argument. In our opinion, this was done in the present case. The court acted, according to the record, immediately upon the first suggestion of counsel, and excluded from the jury any consideration of the argument objected to. There is no merit in this assignment of error.

There are two assignments of error challenging the correctness of the court's action in the admission of evidence offered by plaintiff. One was in permitting Ferrens, a witness called by plaintiff, and who had shown himself to be an experienced miner, to answer the following question: "Q. Was that dangerous employment [referring to the particular service required of plaintiff] for an inexperienced man on any account arising from foul air?" Defendant's counsel objected to this question because it was immaterial, irrelevant, and incompetent, and calls for a conclusion of the witness. The only one of these grounds of objection to which we can give any consideration is that the question calls for a conclusion. The other reasons assigned are so general as, under the established practice of this court, they cannot be considered.

It may be conceded that the question as put was technically improper, in that it called for a conclusion of the witness; but there was no prejudicial error in permitting the question to be asked, because the evidence for the defendant taken thereafter conclusively established that the service which plaintiff testified, and which the jury found, was required of him, was dangerous for any man, experienced or inexperienced. The other testimony alleged to have been objectionable, and to which exception was saved, consists of permitting witness Ray, called by the defendant, to answer the following cross-question put to him by plaintiff's counsel: "Q. How did it come that Flaherty was thrown down below the bulkhead, if rock would not come down?" It is sufficient to say concerning this that the connection in which the question appears renders it proper as a legitimate cross-examination of the witness.

It is next urged that the court erred in refusing to give certain specific instructions asked by the defendant. One was to the effect that if Flaherty, at the time of seeking employment, stated to the superintendent that he was a miner, "then he guaranteed to the defendant that he was a miner, understood the business, and knew all the ordinary risks and dangers incident to the employment which he sought, and also all the dangers arising from the presence of

gas, foul air, and powder smoke." There was no error in refusing this instruction, because it satisfactorily appears from the superintendent's own testimony that Flaherty was hired to wheel and tram, and not to do the work of a general miner. According to the superintendent's own testimony, he knew that the work which Flaherty had formerly done (as detailed to him by plaintiff) was not mining. Moreover, the latter part of the instruction asked and refused contained an incorrect proposition of law. All that plaintiff could have guarantied by implication from the statement alleged to have been made by him that he was a miner was that he was familiar with all the usual dangers arising from the presence of such impurities in mines when conducted with ordinary care and prudence. The instruction requested was too broad. It imputed knowledge to plaintiff of all possible dangers, even those that might arise from gross negligence on the part of the owner. In the light of the undisputed facts, there was no error in refusing to give this instruction. The refusal by the trial court to give several other instructions requested by defendant is assigned for error, but we have not been favored in argument or brief with any particular discussion of them. This is probably because the principles involved in them were thoroughly argued by counsel on treating the propositions already fully considered. We have, however, carefully considered each and all of the instructions so refused, and find that, in so far as they embody correct propositions of law applicable to the facts of the case, they were fully covered by the general charge of the court. There was therefore no error in refusing to give them as requested.

We are unanimously of opinion that the verdict was for the right party, and that there is no substantial error found in the record of which the defendant can justly complain. The judgment must be affirmed.