WEEKS v. SCHARER.

(Circuit Court of Appeals, Eighth Circuit. March 18, 1904.)

No. 1,851.

1. MASTER AND SERVANT—INJURIES TO SERVANT—MINES—EVIDENCE—SELF-
SERVING STATEMENTS.

Where, in an action for injuries to a miner, negligence was alleged, in
that defendant failed to promulgate and enforce a rule that the trapdoors
at the top of the shaft should be closed when the hoist bucket was being
unloaded at that place, evidence of defendant's son that the superintend-
ent of the mine was directed to instruct the employés that such doors
should be closed at such times, offered in support of the testimony of
plaintiff's fellow servant, who alone testified that instructions concern-
ing the closing of such doors had been actually given to the employés,
is inadmissible, as being of a self-serving character.

2. TRIAL—ARGUMENT TO JURY—MISCONDUCT OF COUNSEL—CURING ERROR.

Where, on the attention of the court being called to misconduct of plain-
tiff's counsel in making a certain argument to the jury, which was not
supported by the evidence, the court promptly sustained the objection,
and directed the jury to disregard such improper statement, the error
was cured.

3. FELLOW SERVANT—INCOMPETENCY—SUPERIOR SERVANT—NOTICE.

Where a shift boss in a mine had no power to hire or discharge the
workmen under him, but was merely a fellow servant of plaintiff of a
superior grade or class, the fact that he had power to temporarily sus-
pend workmen did not render him a vice principal, so as to charge the
master with the knowledge of such shift boss as to the incompetency of
a fellow servant, by whose negligence plaintiff was injured.

In Error to the Circuit Court of the United States for the District
of Colorado.

On March 20, 1899, and for some time prior thereto, Weeks was the lessee
and was engaged in the operation of a mine in Teller county, Colo. Part of
the time his son was about the mine as the representative of the owner, but
during all of the time the immediate direction, supervision, and control of the
mining operations were exercised by a superintendent. On the day referred
to, Scharer, who was employed as a trammer, was struck and severely in-
jured in the 500-foot level, near the vertical shaft of the mine, by a jackscrew
which had been allowed to fall from the mouth of the shaft at the surface,
and which, meeting an obstruction in its descent, bounded into the drift where
he was working. One Murcray, a fellow servant of Scharer, had taken the
jackscrew to the surface, and was endeavoring to remove it from the bucket
in which the ascent had been made, when it escaped his control, and fell down
the shaft, with the result mentioned. The mouth of the shaft was equipped
with trapdoors, but they were not closed while Murcray was endeavoring to
remove the jackscrew. Scharer brought suit against Weeks, alleging that he
failed in his duty as employer to make, promulgate, and enforce a rule that
the trapdoors at the top of the shaft should be closed when a bucket was be-
ing loaded or unloaded at that place; also that Murcray was a negligent and
careless workman, and that his habits and character in that regard were either
known to their common employer or could have been known by the exercise
of ordinary care, and that he should have been discharged before the occur-
rence of the injury complained of. The action was tried, and resulted in
a judgment of the Circuit Court in favor of Scharer, which was reversed by
this court. Weeks v. Scharer, 111 Fed. 330, 49 C. C. A. 372. It was again
tried with a similar result. To reverse the second judgment, Weeks prose-
cutes this proceeding in error.

The defense was that a rule requiring the closing of the trapdoors had been
duly made and promulgated; that the careless habits of Murcray were not
known to Weeks, and that, therefore, he was not negligent in retaining him in

his service; that Scharer and Murcray were fellow servants, and that damage to the former by the negligent act of the latter could not be visited upon Weeks. As tending to prove the making and promulgation of the rule, Weeks offered the testimony of his son as to instructions given to the superintendent regarding the operation of the trapdoors. An objection thereto was sustained by the Circuit Court. In his closing argument to the jury the counsel for Scharer, without the authority of any evidence in the case, spoke of an alleged custom among other mine owners to instruct their shift bosses to report men who were found to be careless and reckless. Objection being made to this conduct by opposing counsel, the court promptly sustained the objection, and directed the jury to disregard the statement. In order to show that Weeks had notice of the negligent and careless habits of Murcray, testimony was received that one of the shift bosses was fully advised thereof. There was also testimony tending to show that the shift boss had power to temporarily lay off or suspend the workmen, but not the power to hire or discharge them. Weeks requested that the jury be instructed that notice to the shift boss of Murcray's habit of carelessness was not notice to him, and would not be such notice unless he had invested the shift boss with authority to hire and discharge the workmen. The Circuit Court refused to so instruct the jury, but, on the contrary, instructed them that, if the shift boss had authority "to discharge incompetent miners or to suspend them," he represented Weeks, and that notice to him was notice to Weeks. These three matters are relied upon by Weeks, the plaintiff in error, for the reversal of the judgment of the Circuit Court.

Lester McLean (W. Scott Bicksler and Edmon G. Bennett, on the brief), for plaintiff in error.

Horace N. Hawkins (Thomas M. Patterson and Edmund F. Richardson, on the brief), for defendant in error.

Before SANBORN, VAN DEVANTER, and HOOK, Circuit Judges.

HOOK, Circuit Judge, after stating the case as above, delivered the opinion of the court.

In view of the testimony on behalf of the plaintiff it became important to the defendant, Weeks, to prove that he discharged his duty to make, promulgate, and enforce a rule that the trapdoors at the mouth of the shaft should be closed when the bucket was being loaded or unloaded at that place. To this end he sought to show by his son that the superintendent was directed to instruct the employés accordingly. The proffered testimony was excluded by the trial court. It is clear that the testimony was of a self-serving character, and inadmissible, and that its purpose was to improperly strengthen the statement of Murcray, who alone testified for defendant that instructions concerning the closing of the trapdoors were actually given to the employés. The superintendent was not a mere servant of the owner. In addition to his general powers of management and supervision of the operations of the mine, he had been invested with the power to hire and discharge the employés. He represented the owner in respect of the primary and personal duties of the latter to the workmen. He also possessed the power, and it was his duty, to make and enforce all needful rules and regulations for the protection of the men under him; and, being clothed with this power and charged with the corresponding duty, the further directions from the son of the owner were wholly superfluous. It is contended that the testimony which was rejected tended to show the making of a rule with respect

to the closing of the trapdoors, although it might not tend to show that such a rule was actually promulgated. But the mere promulgation of the rule by the superintendent or other person in authority involved at once its making or establishment. The alleged directions from the son without corresponding action by the superintendent would have been futile, while action by the superintendent without the alleged directions from the son would have been sufficient. The testimony was properly excluded.

It is also assigned as error that counsel for Scharer during his closing argument assumed, without warrant and authority in the record, to inform the jury that shift bosses in other mines were charged with the duty of advising their principals of the careless and reckless habits of the workmen. This matter may be dismissed from further consideration with the observation that the attention and action of the court were at once invoked, and the court promptly sustained the objection, and directed the jury to disregard the improper statement. Portland Gold Min. Co. v. Flaherty, 111 Fed. 312, 49 C. C. A. 361.

There remains the question of the correctness of the instruction that notice to a shift boss of the reckless habits of a servant is notice to the master if the shift boss has authority to suspend, but is without authority to discharge, such servant. The instruction was predicated not upon any claim of negligence in the original hiring of Murcray, but upon the failure to discharge him after an alleged notice of his reckless habits. To bind the master in such a case the notice must be given to the master himself, or to some one who represents him in respect of his positive duty to exercise reasonable care in the retention of his servants. Notice of the character of a servant given to a fellow servant who does not stand in the place of the master is ineffective. It is settled doctrine in the courts of the United States that mere differences in grades of service or in power or authority with respect to each other will not detach one of a number of employés from the class of fellow servants. The presumption is that all who enter the service of a common master, and engage in a common service or in the same general undertaking, are fellow servants. A few of the multitude of cases will serve to illustrate the application of these rules. The following have been held to be fellow servants: Conductor and brakeman on a freight train (Railroad v. Conroy, 175 U. S. 323, 20 Sup. Ct. 85, 44 L. Ed. 181); foreman and laborer in mine (Alaska Min. Co. v. Whelan, 168 U. S. 86, 18 Sup. Ct. 40, 42 L. Ed. 390); roadmaster, foreman of section gang, member of gang and train conductor (Martin v. Railroad, 166 U. S. 399, 17 Sup. Ct. 603, 41 L. Ed. 1051); foreman and section hands (Railroad v. Peterson, 162 U. S. 346, 16 Sup. Ct. 843, 40 L. Ed. 994, and Railroad v. Charless, 162 U. S. 359, 16 Sup. Ct. 848, 40 L. Ed. 999); foreman and other members of switching crew (Railroad v. Keegan, 160 U. S. 259, 16 Sup. Ct. 269, 40 L. Ed. 418); foreman of a shift of miners and members of another shift (Davis v. Mining Co., 117 Fed. 122, 54 C. C. A. 636); foreman and employés in railroad machine shop (Gaynon v. Durkee, 87 Fed. 302, 31 C. C. A. 306); foreman of a quarry and a stone cutter (Reed v. Stockmeyer, 74 Fed. 186, 20 C. C. A. 381); foreman of street gang and laborer (Balch v. Haas, 73 Fed. 974, 20 C. C. A. 151); foreman and member of bridge gang, the former having

power to hire and discharge the men and to direct and control them in their work (Railway v. Brown, 73 Fed. 970, 20 C. C. A. 147); shift boss and miner (Weeks v. Scharer, 111 Fed. 330, 49 C. C. A. 372). For the negligence of one of these resulting in injury to the other the master is not liable unless he has intrusted to the negligent servant the performance of his positive duties as master. And in such case, when liability exists, the negligence must arise from the failure to perform the particular duty of the master with which the servant is charged. Thus it was held in Railroad v. Peterson and in Railroad v. Charless, supra, that a railroad company was not liable to a member of a section gang for the personal negligence of his foreman, although it appeared that the latter had the power to hire and discharge the men and to manage and superintend their labors.

The shift boss and Scharer and Murcray were mere fellow servants of a common employer, unless the possession by the shift boss of the power to temporarily suspend his co-workers raised him to a different class, and charged him with the positive duty of the master in respect of the competency of the employés. If the shift boss had been clothed with power to discharge the men under him, he would then have occupied the position of a vice principal, and it would have been his duty to exercise reasonable care to retain in the service only those who were careful and prudent. But does he occupy such a position merely because he has the power to temporarily suspend them? The absence of the power to discharge, in connection with the possession of the power to suspend, would seem naturally to imply that the shift boss had not been charged with that positive duty of the master, and that the master had withheld an authority which alone is controlling and effective. An essential and important quality of representation would seem to be lacking. The power to suspend the workmen pertains more to the usual and ordinary progress and performance of the work. It is a part of that authority which is generally intrusted to superintendents, foremen, and bosses who direct the body of employés where to work, how to work, and when, and concededly the possession of such powers does not make a superintendent, a foreman, or a boss a vice principal. Superintendence without the power of temporary suspension is unusual. Such power appeals to the mind as being a natural and inherent quality of mere superintendence. It pertains to the province of ordinary supervision. It is similar in character to the power to temporarily suspend the prosecution of the work which in itself operates as a suspension of the workmen, and such power is plainly included in that of ordinary superintendence. We are of the opinion that a shift boss who is without the power to discharge the workmen under him is not charged with the master's duty as to the exercise of care in the retention of none but competent servants, and is therefore not the master's representative in that respect, although he may possess the power of temporary suspension. The position of vice principal necessarily implies the investiture of authority commensurate with its duties. The power to temporarily suspend a workman may well be exercised by a fellow workman of a superior grade or class without destroying their legal relation to each other. We are aware that the Circuit Court of Appeals for the Sixth Circuit has announced a contrary view. Rail-

road v. Henthorne, 73 Fed. 634, 19 C. C. A. 623. But we believe that the conclusion which we have reached is in accord with the spirit of the later decisions of the courts upon this subject. Attention is called by counsel to the former opinion in this case. Weeks v. Scharer, supra. It is apparent from a cursory reading of that opinion that this court did not hold that the mere possession by a servant of the power to suspend his fellow servants raised him to the position of a vice principal. The record then before the court did not present such a question, and the employment in the opinion of the term "suspend" was in connection with a reference to the doctrine of a number of cases which were therein cited; that of Railroad v. Henthorne, supra, being among them.

Counsel for Weeks did not strictly comply with rule 11 of this court (90 Fed. cxlvi, 31 C. C. A. cxlvi) in the assignment of the error involved in the instruction complained of; but in view of his manifest purpose to challenge the correctness of that feature of the instruction which relates to the power of the shift boss to suspend the other workmen, and of the further provision of the same rule that the court may, at its option, notice a plain error which is not assigned at all, we have deemed it proper to give due consideration to their contention. We are of the opinion that the instruction as given was erroneous.

The judgment of the Circuit Court will be reversed, and the cause remanded for a new trial.