UTAH CONSOL. MINING CO. v. PAXTON.

(Circuit Court of Appeals, Eighth Circuit. November 8, 1906.)

No. 2,338.

1. MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENCE—FACTS—DECISION.

Under the statute of a state which provides that a servant who is authorized by his master to direct another of the latter's servants in the discharge of his duty is a vice principal, a furnaceman, in response to a complaint of danger from a car, promised a grater, whom he had authority to direct in his work, that he would notify a carman, employed by the same master under a different foreman, to stop his car before it came to the furnace, and that the grater was at work upon the track clearing the hopper of the furnace just below it. Such a notice to the carman had frequently caused the latter to stop his car before coming to the workmen similarly situated, and to hold it until they finished their

work. In reliance upon the promise, the grater went to work upon the track and was injured by a car which ran upon it.

*Held*, the promise of the furnaceman was within the scope of his agency, and it relieved the grater from the assumption of the risk.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 638–640.

Assumption of risk incident to employment, see Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

2. SAME—ASSUMPTION OF RISK—EXCEPTION ON PROMISE TO REMOVE DEFECT.

There is an exception to the rule that a servant assumes the ordinary risks and dangers of his employment, to the effect that, where a servant makes complaint to his master of a dangerous defect in his place of work or in the appliances furnished him, and the master promises to remedy it, the risk of that defect is cast upon the master, and the servant is relieved from it for a reasonable time to enable the employer to remove it, unless the danger from it is so imminent that a person of ordinary prudence would not continue in the employment after the discovery of the condition.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 638–640.]

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Utah.

On July 2, 1904, James Paxton was working as a grater on one of the reverberatory furnaces of the defendant, the Utah Consolidated Mining Company, a corporation, at its Highland Boy smelter. His duty was to open up the grates and do whatever the furnaceman directed him to perform. Thaxton was the furnaceman under whose direction he was employed. The smelter was a large building 300 feet long and 50 feet wide. There were four furnaces ranged along each side of this building, and over these furnaces was a railroad track upon which a trolley car was operated to carry coal to the furnaces. The hoppers of the furnaces opened beneath the rails, were about 2½ feet wide, and the coal was dropped into them from the trolley car which passed above them. The coal in the furnace upon which Paxton was employed became clogged, and he and McCandless, a helper, were sent by Thaxton to punch the coal down through the hopper by the use of an iron bar and a sledge hammer. In order to do this work they were compelled to occupy the railroad track above the furnace. The atmosphere was smoky and hot, and after working there a short time they went down to Thaxton and told him that they could not work, that it was smoky and dark, and they were afraid they would be run over by the car. Thereupon he went upon the railroad track with them and tried to persuade them to go on with their work. They told him that, if he did not go and have the car stopped, they would not work there. He replied: "I will go and tell the carman, so that he will stop. He will stop the car." Paxton had seen a furnaceman go and report to the carman that there were men up there at work and had then seen the car stop before it came to the furnace where they were laboring. He and McCandless accordingly waited about 15 or 20 minutes and then commenced to work upon the track driving the coal down into the hopper, when a car came along and struck and injured him. The furnaceman had not informed the carman that Paxton and the helper were at work upon the track. The testimony that the furnaceman promised to report to the carman that they were at work was contradicted. Counsel for the defendant requested the court to instruct the jury to return a verdict in its favor, but the court refused, and this ruling is assigned as error.

W. J. Barrette (H. P. Henderson, Frank Pierce, and E. B. Critchlow, on the brief), for plaintiff in error.

T. Marioneaux (A. B. Irvine and O. W. Powers, on the brief), for defendant in error.

Before SANBORN and VAN DEVANTER, Circuit Judges, and PHILIPS, District Judge.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The accident which is the subject of this action occurrred in the state of Utah. Under the statutes of that state a servant, who is authorized by his master to direct another servant of the same master in the discharge of his duty as an employé, is a vice principal of the master, and not a fellow servant of the employé. Rev. St. Utah 1898, §§ 1342, 1343; Southern Pac. Co. v. Schoer, 114 Fed. 466, 470, 52 C. C. A. 268, 272, 57 L. R. A. 707. Thaxton was a vice principal of the mining company, and the latter is responsible for his acts and negligence within the limits of his authority. Minneapolis v. Lundin, 58 Fed. 525, 527, 7 C. C. A. 344, 346.

The place in which the plaintiff was at work was dangerous, and he knew it. The general rule is that a servant assumes the ordinary risks and dangers of his employment which are known to him, or which would be obvious to a person of ordinary prudence and ability in his situation. There is an exception to this rule that, when a servant makes complaint to his master of a dangerous defect in his place of work or in the appliances furnished him, and the employer promises to remedy it, the risk of that defect is cast upon the master, and the servant is relieved from it for a reasonable time to enable the employer to remove it, unless the danger from it is so imminent that a person of ordinary prudence would not continue in the employment after the discovery of the dangerous condition. St. Louis Cordage Co. v. Miller, 61 C. C. A. 477, 480, 126 Fed. 495, 498. If the plaintiff below had given notice of the dangerous condition of his place of work to the mining company, and a promise to remove it had been made by that corporation, there could have been no doubt that the case would have fallen clearly within this exception. Counsel for the corporation insist, however, that Thaxton, the furnaceman, had no authority to stop the car, and that the notice to him and his promise were futile, because in receiving the one and making the other he was not acting within the scope of his agency. Weeks v. Scharer, 64 C. C. A. 11, 14, 129 Fed. 333, 336. The superintendent of the smelter testified that furnacemen in the position of Thaxton had no authority to stop the car, but that, if they would say to the carman, "You had better stop that car because there is a man on the track," the carman would stop, the carmen were under a different foreman from the furnacemen, and that Thaxton should have notified the foreman of the presence of the plaintiff and the helper upon the track. Before the accident the plaintiff had seen furnacemen report to carmen that servants were on the track at work upon the hoppers of the furnaces, and he had observed that after such reports the cars stopped before they came to the workmen until the latter completed their work. It was the duty of Thaxton to remove the obstruction from the hopper of the furnace and to keep the latter in operation. The servants under his direction refused to work to this end, unless steps were taken

to prevent the cars from running over them while they were at work in the smoke and darkness upon the track. They all knew that a notice by a furnaceman to the carman that men were working upon the track to clear the hopper had caused the car to stop in the past until the work was done. They inferred, and the deduction was natural and reasonable, that the same cause would again produce the same effect. The furnaceman, in order to induce the servants to proceed with the work, promised to notify the carman to stop the car, and that they were at work upon the track, and the workmen, in reliance upon this agreement, returned to their task, and the plaintiff was injured. The promise of the furnaceman was necessary to accomplish the work of the master intrusted to him. He made it. He was engaged in the service of his employer to secure the performance of that work, and it had that effect. There is therefore no escape from the conclusion that it was within both the apparent and the actual scope of the agency of the furnaceman, and there was no error in the refusal of the court to direct a verdict for the defendant. Amato v. Northern Pacific R. Co. (C. C.) 46 Fed. 561; Bradley v. New York Central R. Co., 62 N. Y. 99, 104.

The judgment below is affirmed.