## BALAKLALA CONSOL. COPPER CO. v. REARDON.

(Circuit Court of Appeals, Ninth Circuit. February 15, 1915.)

No. 2420.

1. TRIAL ☞133—ERROR—CURE BY INSTRUCTIONS TO DISREGARD.

In an action for personal injuries, the admission of a question asked a juror on his voir dire as to whether he had any connection with an indemnity company or organization for the purpose of insuring against personal injuries, and the statement of counsel, in response to the court's inquiry as to the purpose of such examination, that there was indemnity insurance against that kind of an accident, and that the insurance company was defending through its own counsel, was cured by the court's remark that he would instruct the jury to pay no attention to the remark of counsel, unless it should appear that it was a pertinent fact, where no evidence was adduced to show that the juror was interested in any such company, and it therefore did not appear that it was a pertinent fact, as the court's remark was tantamount to a distinct instruction to pay no attention to the counsel's remark, unless it should appear to be pertinent, and, if defendant's counsel desired a further instruction at the close of the trial, it was his duty to request it.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 316; Dec. Dig. ☞133.]

2. DEATH ☞72—ACTIONS FOR CAUSING—EVIDENCE—LOSS OR INJURY RESULTING FROM DEATH.

Under Civ. Code Cal. § 1970, providing that, when death results from injury to an employé, his personal representative shall have a right of action against the employer for the benefit of the widow, children, dependent parents, etc., in an action for the benefit of the parents, evidence that the parents were very poor, and that deceased had contributed to their support since he was big enough to work, was properly admitted; the pleadings having made an issue as to the parents' dependency.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 91; Dec. Dig. ☞72.]

3. DEATH ☞32—ACTIONS FOR CAUSING—PERSONS FOR WHOSE BENEFIT SUIT MAY BE BROUGHT.

Under Civ. Code Cal. § 1970, to support an action for the death of an employé for the benefit of his parents, there must be an actual dependency, and not a dependency resting on a presumption on account of relationship.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 47, 48; Dec. Dig. ☞32.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. MASTER AND SERVANT ☞286—ACTIONS FOR DEATH—QUESTIONS FOR JURY.**

In an action for the death of a miner, killed while drilling holes for blasting by the explosion of a missed shot, evidence *held* to make a question for the jury as to defendant's negligence with respect to the failure of a person employed for that purpose to inspect for the purpose of discovering missed shots.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. ☞286.]

**5. MASTER AND SERVANT ☞107—LIABILITY FOR INJURIES—UNSAFE PLACE TO WORK.**

The rule that an employer is not bound to furnish a safe place, where the perils to the working place are caused by the progress of the work in which the employé is engaged, had no application to miners engaged in drilling holes preparatory to blasting, and injured by the explosion of a missed shot in a hole partly drilled by the preceding shift; there being no danger in the work if proper inspection was made, and the employer having undertaken to inspect each working place before assigning the men to work there.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199–202, 212, 254, 255; Dec. Dig. ☞107.]

**6. MASTER AND SERVANT ☞205—LIABILITY FOR INJURIES—CONTRIBUTORY NEGLIGENCE.**

Where a mine operator provided an inspector to search for and discover missed holes before each succeeding shift went to work at any place, a miner, engaged in drilling holes preparatory to blasting, and his helper, were entitled to assume that such inspector had done his duty, and to act upon that assumption.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 547–549; Dec. Dig. ☞205.]

**7. MASTER AND SERVANT ☞289—ACTIONS FOR INJURIES—QUESTIONS FOR JURY.**

In an action for the death of a miner, engaged in drilling preparatory to blasting, evidence *held* insufficient to make a question for the jury as to whether it was his duty to look for and discover, if possible, missed shots in places where he was at work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089, 1090, 1092–1132; Dec. Dig. ☞289.]

**8. MASTER AND SERVANT ☞291 — ACTIONS FOR INJURIES — INSTRUCTIONS — CONFORMITY TO EVIDENCE.**

Where an action for the death of an employé, alleged to have been due to the negligence of an inspector, and an action for injuries to another employé, were tried together, and in the action for death there was no allegation that the inspector was incompetent, and the court, while covering many points common to both cases in its charge, distinguished the cases in every particular in which they differed, and expressly directed the jury's attention to the fact that in the action for injuries the complaint alleged that the inspector was incompetent, and that his incompetence contributed proximately to the injury, the refusal of an instruction that in the action for death there was no charge in the complaint that the accident was proximately caused by the inspector's incompetence, and that no recovery could be had therefor, was not error, though it might properly have been given.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1133, 1134, 1136–1146; Dec. Dig. ☞291.]

In Error to the District Court of the United States for the Second Division of the Northern District of California; William C. Van Fleet, Judge.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Action by J. E. Reardon, administrator of Frank Whitsett, deceased, against the Balaklala Consolidated Copper Company. Judgment for plaintiff, and defendant brings error. Affirmed.

For opinion below on demurrer and motion to strike, see 193 Fed. 189.

Frank Whitsett, the deceased, and his brother, Fred Whitsett, were employed to operate a Burleigh drill in the defendant's mine. The deceased was an experienced miner, and was known as a machine man. His brother was a machine man's helper, or chuck tender. The drill was operated by compressed air, and was used to drill holes in the rock or ore, preparatory to blasting. The brothers exchanged work from time to time, and alternately worked as drill man and chuck tender. At the time of the accident Fred was operating the drill, and the deceased was chuck tender. It was the practice to drill about a dozen holes in the face of the drift, four near the top, four in the middle, and four near the bottom. The bottom four were called "lifters." When the holes were finished, they were filled with dynamite, and there was a cap and fuse for each hole. As the men went off shift, the fuses were lighted, and the rock was blasted out. On the night of the accident, when the Whitsett brothers went to work in one of the drifts, the holes had all been drilled by the preceding shift, except three of the lifters, and one of those had been partly drilled. They began to work on the unfinished hole, and while they were drilling it the drill struck and exploded a missed shot, which killed the deceased and seriously injured his brother. Separate actions were brought by the administrator of Frank Whitsett and by Fred Whitsett. The cases were joined for trial before the same jury. The plaintiff obtained a verdict against the defendant in the sum of $3,500.

The complaint alleged failure and neglect of the defendant to exercise ordinary care in providing and maintaining a safe, suitable, and proper place for the deceased to perform his labor, and it alleged that the presence of the unexploded blast was unknown to the deceased, but could have been discovered and known by the defendant in the use and exercise of ordinary care and diligence. The answer denied that the defendant could have discovered or known of the missed shot. The main issue before the court below was whether or not the accident was proximately caused by negligence on the part of the defendant. The defendant insisted that there was no duty on its part to furnish the deceased with a safe place in which to work, and that the duty of looking for and detecting a missed shot rested on the deceased, and further contended that the missed shot was so concealed that it was impossible, by ordinary or practicable methods, to discover it.

C. H. Wilson, of San Francisco, Cal., for plaintiff in error.

William M. Cannon, of San Francisco, Cal., and C. S. Jackson, of Roseburg, Or., for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). [1] Error is assigned to a statement made by counsel for the plaintiff, in the presence of the jury, to the effect that the defendant had indemnity insurance against the accident, and that the insurance company was defending the action through its own counsel. On the examination of one of the talesmen, on his voir dire, by Mr. Cannon, counsel for the plaintiff, the following colloquy was had:

"Mr. Cannon: Q. Have you any connection, either as a stockholder or otherwise, with an indemnity company, or organization for the purpose of insuring people against personal injuries?

"Mr. Wilson: I object to that question as immaterial.

"Mr. Cannon: I do not think that it is immaterial. I would like to state why I asked the question.

"The Court: What is the reason?

"Mr. Cannon: The reason is—

"Mr. Wilson: I object to the reason being stated.

"The Court: I am asking for it.

"Mr. Cannon: In this case there is certain indemnity insurance against this kind of accident, and the insurance company is defending, through its own counsel, this action; therefore I have a right to inquire.

"Mr. Wilson: I object to the statement made by counsel, and assign it as error. It is an improper statement to make in this case. * * * We now move that the jury be discharged, on the ground that improper and foreign matter has come to the knowledge of the jury.

"The Court: The motion will be denied. I will instruct the jury to pay no attention to the remark of counsel, unless it should appear it is a pertinent fact.

"Mr. Cannon: Q. Have you any connection, either as a stockholder or otherwise, with any indemnity company such as I have described?

"Mr. Wilson: We insist upon our objection.

"The Court: I overrule the objection.

"Mr. Wilson: I will take an exception."

Error is assigned, not only to the statement of counsel, but to the ruling of the court in refusing to discharge the jury, and in admitting the testimony.

In Pennsylvania Co. v. Roy, 102 U. S. 451, 459, 26 L. Ed. 141, the court said:

"The charge from the court that the jury should not consider evidence which had been improperly admitted was equivalent to striking it out of the case. The exception to its admission fell when the error was subsequently corrected by instructions too clear and positive to be misunderstood by the jury. The presumption should not be indulged that the jury were too ignorant to comprehend, or were too unmindful of their duty to respect, instructions as to matters peculiarly within the province of the court to determine. It should rather be, so far as this court is concerned, that the jury were influenced in their verdict only by legal evidence. Any other rule would make it necessary in every trial, where an error in the admission of proof is committed, of which error the court becomes aware before the final submission of the case to the jury, to suspend the trial, discharge the jury, and commence anew. A rule of practice leading to such results cannot meet with approval."

In Throckmorton v. Holt, 180 U. S. 552, 567, 21 Sup. Ct. 474, 480 (45 L. Ed. 663), the court said:

"The general rule is that, if evidence which may have been taken in the course of a trial be withdrawn from the consideration of the jury by the direction of the presiding judge, such direction cures any error which may have been committed by its introduction."

In line with these cases is Turner v. American Security & Trust Co., 213 U. S. 257, 267, 29 Sup. Ct. 420, 53 L. Ed. 788.

The only modification of the rule is in cases where the court can see that such a strong impression has been made upon the minds of the jury by illegal and improper testimony that its subsequent withdrawal will not remove the effect caused by its admission. Portland Gold Min. Co. v. Flaherty, 111 Fed. 312, 49 C. C. A. 361, was a case in which, as here, counsel for the plaintiff stated to the jury that the case was being defended by an insurance company; but in view of the fact that the court immediately, upon the first suggestion of counsel, excluded from the jury any consideration of the statement, the Circuit Court of

Appeals held that there was no reversible error. See also, Weeks v. Scharer, 129 Fed. 333, 64 C. C. A. 11, Union Pac. R. Co. v. Thomas, 152 Fed. 365, 371, 81 C. C. A. 491, and Armour & Co. v. Kollmeyer, 161 Fed. 78, 83, 88 C. C. A. 242, 16 L. R. A. (N. S.) 1110.

The defendant contends that the trial court did not unequivocally withdraw from the jury the consideration of the statement so made by counsel, and that the court omitted to charge the jury, on the final submission of the case, to disregard that statement. But we regard the remark of the court as a distinct charge to the jury. It was tantamount to saying:

"I instruct the jury to pay no attention to the remark of counsel, unless it should appear it is a pertinent fact."

It did not thereafter appear that it was a pertinent fact, for no evidence was adduced to show that the juror was interested in any indemnity company. If counsel for the defendant desired further instruction at the conclusion of the trial, it was his duty to bring the matter to the attention of the court at that time, and request such an instruction. We cannot think that the matter so alluded to on the examination of the juror was of a nature so impressive that the jury could not divest their minds of it and render a verdict according to the instructions of the court and the evidence in the case. There is no indication of prejudice in the amount of the verdict which was rendered. It is not improbable that all intelligent jurors of the present day know, as a matter of common knowledge, that in the large majority of damage cases brought against mining and manufacturing corporations the real party in interest as defendant is an indemnity insurance company. There is little, if any, substantial ground for assuming that a juror of the class of men who are usually summoned in a federal court would permit such a fact to influence in any degree his verdict.

[2, 3] It is contended that the court erred in admitting evidence of the financial condition of the parents of the deceased; the evidence being that they were very poor, and that the deceased had contributed to their support since he was big enough to work for wages. Section 1970 of the Civil Code of California contains this provision:

"When death, whether instantaneous or otherwise, results from an injury to an employé received as aforesaid, the personal representative of such employé shall have a right of action therefor against such employer, and may recover damages in respect thereof; for and on behalf, and for the benefit of the widow, children, dependent parents, and dependent brothers and sisters, in order of precedence as herein stated, but no more than one action shall be brought for such recovery."

The complaint had alleged that James Whitsett, the father of the deceased, was wholly dependent upon the said Frank Whitsett for subsistence and support, and by reason of his death was left utterly helpless, and destitute. The answer denied this allegation on information and belief. The allegation was made a distinct issue, and we see no reason why the plaintiff should not be allowed to prove it as he did.

The defendant cites Green v. Southern Pacific Co., 122 Cal. 563, 55 Pac. 577, as decisive of the question. In that case it was held that, in an action brought by the widow and children of the deceased to

recover damages as his heirs at law for his death caused by the negligence of the defendant, the evidence of the poverty of one of the plaintiffs, a daughter of the deceased, who was living with him at his death, was not competent, and that its admission was prejudicial error, that it had no pertinent or competent bearing on the extent of the injury suffered by the plaintiffs, and that, whatever the daughter's condition in life, she was entitled under the law, in common with her coplaintiffs, to maintain the action solely as one of the next of kin and heirs at law of the deceased. In that case the evidence which was objected to had no relation to the issues. In the case at bar, it went to the very right of the plaintiff to recover.

But the defendant contends that the word "dependent," as used in section 1970 above quoted, means only one who is dependent for support and maintenance, that it does not necessarily mean a complete dependence, but may be a partial dependence, and that therefore it was error to permit evidence that the parents were very poor. We think that the word "dependent," as used in the statute, was intended to describe a condition of actual dependency, and not a dependency that rested on a presumption on account of relationship, for it is applied to persons to whom no such presumption obtains. It was therefore necessary for the plaintiff to prove, not a mere relation of dependency, but an actual dependency. South Side Trust Co. v. Wilmarth, 199 Fed. 418, 117 C. C. A. 650. We find no decision of any court of California holding that, under the provisions of section 1970 above quoted, evidence such as was admitted by the court below in this case is incompetent. We find no error, therefore, in its admission.

[4, 5] Error is assigned to the denial of the defendant's request for an instructed verdict in its favor. Prior to the argument to the jury, the defendant submitted to the court the following written request:

"You are instructed by the court that on the evidence and under the law you will return a verdict in this case for the defendant."

It does not appear that the request was argued before the court, or that the particular grounds of the motion were at any time specified. It has been held in the Seventh circuit that such a motion is insufficient to raise a question for review in the Circuit Court of Appeals. Adams v. Shirk, 104 Fed. 54, 43 C. C. A. 407. We are disposed to assume, however, that the court below passed upon the question which is now presented in this court—that is, whether or not there was sufficient evidence to go to the jury to show the defendant's negligence—and to hold that the motion was sufficient.

It appears from the testimony that the defendant had one employé, Yokum, who was known as a "missed hole" man, whose sole duty it was to examine the faces of the drifts before crews were set to work drilling therein, to discover and shoot missed holes. This man had made a casual inspection of the face of the drift, where the accident occurred; but, as the muck had not then been removed, he could not inspect the lowest row of holes. After the muck was removed, Yokum was present at the drift; but he made no further inspection of it. On that failure of Yokum to inspect the plaintiff bases its charge of negligence. But the defendant urges that there was evidence tending to

show that it was the duty of all employés working in the drifts to look out for missed holes, and that that duty rested upon the plaintiff's intestate, as well as upon Yokum. But there was testimony to the contrary. Several of the employés testified that they were never warned or given instruction by the defendant to look for missed holes.

Again, the defendant contends that it was not required to furnish the men engaged in drilling holes a safe place to work, for the reason that the working place was not of a permanent character, but was constantly shifting or being transformed, as the result of the employé's work, invoking the rule that the employer is not bound to furnish a safe place where the perils to the working place are caused by the progress of the work in which the employés are engaged. That rule has no application to the present case. The work was not work of construction or repair, in which the risks are caused by the progress of the work, and are assumed by the employé. It is a case in which the defendant directed its employés to work in places which had been prepared for their work as each gang was moved about the mine from drift to drift, and the defendant had undertaken to inspect each working place before assigning the men to work there. There was no danger in the work if proper inspection was made.

In Rocky Mountain Bell Tel. Co. v. Bassett, 178 Fed. 768, 102 C. C. A. 216, we said:

"The employer's duty was either to make the working place safe, or, if the danger was not obvious, to notify the employé of the hidden, unseen, and unappreciated danger, so that he might adopt means for his own safety."

And again we said:

"But where an employé is called from other work, and is set to work in an excavation, he has the right to assume that the master has investigated the conditions, and that the place is safe unless the danger is plain and obvious."

But it is said that there was no neglect of the master's duty in law in the present case for the reason that at times it was impossible to discover missed holes, and that neither the foreman who set the Whitsett brothers to work, nor the Whitsett brothers themselves, saw any indication of a missed hole at the place where the drill was set. We are not at all impressed with the credibility of the statement that the missed hole was not discoverable. Clearly it could have been found on proper inspection. It was a hole drilled in rock, and of a diameter sufficient to hold sticks of dynamite and a fuse. If Yokum had "barred" down all the loose rock on the face of the drift, as it was his duty to do, according to the testimony, he must necessarily have discovered the missed hole. Upon all the testimony we are convinced that the trial court committed no error in submitting the case to the jury.

The foregoing considerations dispose of the contention that the court erred in refusing to charge the jury, in substance, that no duty rests upon an employer to furnish a safe place to work, if the working place is not permanent, or has not previously been prepared by the master as a place for doing the work.

[6] Nor do we find error in the instruction, which the court gave, to the effect that if the jury found that the defendant provided an inspector called a "missed hole" man, whose duty it was to search for

and discover missed holes before each succeeding shift should go to work at any place, any driller or chuck tender was entitled to assume that such an inspector had done his duty in that regard, and to act upon that assumption.

[7] The defendant assigns error to the refusal of the court to charge that, if they found that it was the duty of Frank Whitsett to look for and discover, if possible, missed shots in places where he was engaged to work, his administrator cannot recover in this action, whether, upon the exercise of ordinary care Frank Whitsett could have found the missed shot, or it was so concealed that he could not, in the use of ordinary care, have found it. It is a sufficient answer to this assignment to point to the fact that there was no proof that it was Frank Whitsett's duty to look for missed shots. It is true that the foreman of the defendant's mine testified that it was the duty of all machine men to look for missed holes, in order to protect themselves. He did not testify, however, that any such rule was ever communicated to the plaintiff's intestate. On the contrary, the defendant's witness Meyers, the shift boss, when asked about the duty of machine men with reference to discovering missed holes said:

"I do not know that you would call it a duty. Of course, we did all we could about missed holes and things like that."

Meyers went on to say that the machine men were naturally on the lookout for missed holes, and some chuck tenders looked for missed holes and some did not.

"That is a thing that is so thoroughly understood among miners that there is no such thing as duty attached to it. Independently of instructions, most all the drill men and chuck tenders look for missed holes."

In the face of such testimony, the jury would not have been justified in finding that it was the duty of Frank Whitsett to look for and discover missed shots.

[8] It is assigned as error that the trial court refused to instruct the jury that, in the action brought by Reardon for the death of Frank Whitsett, "there is no charge in the complaint that the accident was proximately caused by the incompetence of Yokum," and that no recovery could be had in that case, or, if the jury found that the accident was proximately caused by the negligence of Yokum, the verdict must be for the defendant. While the first portion of the requested charge might properly have been given, it was not error to refuse it. It was coupled, however, with matter which clearly did not express the law, and, in any view, an instruction as to the incompetence of Yokum was not appropriate to the present case. Fred Whitsett in his complaint had alleged that Yokum was incompetent, but no such allegation was made in the case at bar. The court, in instructing the jury, covered many points that were common to both cases, but pains were taken to distinguish the two cases in every particular in which they differed. The court expressly directed the attention of the jury to the fact that in the case of Fred Whitsett the complaint alleged that the defendant had employed an incompetent man as a "missed hole" man, and that that fact contributed proximately to Fred Whitsett's injury.

We find no error. The judgment is affirmed.