[No. 4824.]

THE STRATTON CRIPPLE CREEK MINING AND DEVELOPMENT COMPANY v. ELLISON.

1. Removal of Causes—Citizenship of Parties—Separable Controversy—How Determined.

The right of removal to a federal court on the ground of a separable controversy must be determined solely by the complaint itself, for the matter constituting ground for removal cannot be supplied by judicial knowledge or by subsequent pleadings.— P. 504.

2. Same—Concurring Negligence.

A nonresident mining corporation and its foreman in charge were joined as defendants in an action by a miner for personal

injuries in its local mine, the complaint alleging that the foreman knew of the unsafe condition of the stope where plaintiff was injured, and negligently permitted such condition to exist, and also alleged that such stope was rendered unsafe and was negligently maintained in such condition under the direction of the corporation's superintending officers and with its knowledge and consent. Held, that the complaint alleged such concurrent acts of negligence against defendants as are sufficient to defeat an application by defendant corporation to remove the cause to the federal court.—P. 504.

3. Master and Servant—Injuries to Servant—Contributory Negligence—Assumed Risk—Evidence.

In an action for injuries received by the falling of a boulder in the stope of a mine, evidence reviewed, and held sufficient to sustain a finding that plaintiff was not guilty of contributory negligence, and that his injury did not arise from any risk assumed by him.—P. 505.

4. Appellate Practice—Finding of Jury.

The finding of a jury under proper instructions will not be disturbed on appeal, although a different conclusion might well have been reached on the evidence.—P. 506.

5. Pleading — Master and Servant — Negligence of Master — Injuries to Servant—Concurring Negligence.

In an action by a miner for injuries received, the complaint averred that the stope where plaintiff was injured had been negligently mined, in that no timbering had been done; that the ground, after being negligently broken, had been allowed to remain without supports in an unsafe condition; that such negligence, together with the unsafe condition produced thereby, occurred with the knowledge and consent of the defendant corporation and under the direction of its superintending officers, and that its foreman in charge was fully advised of the dangerous condition of the stope, and negligently permitted such condition to remain. Held, that such allegations sufficiently charge negligence against the corporation, as well as against its foreman.—P. 506.

6. Appellate Practice—Verdict Based on Conflicting Evidence.

A verdict based on conflicting testimony will not be disturbed on appeal, unless clearly against the weight of the evidence.—P. 507.

7. Appellate Practice—Harmless Error.

Error in the admission of testimony is without prejudice, where the fact sought to be proved thereby is otherwise fully established by competent evidence and uncontradicted.—P. 509.

8. Master and Servant—Injuries to Servant—Evidence—Admissibility.

In an action against a mining company and its foreman for personal injuries caused by the falling of a boulder in the stope of a mine, in which plaintiff was working under the direction of such foreman, evidence that the latter had ordered another employee to remove the boulder was admissible to show knowledge on the part of the foreman of the unsafe condition of the stope, and also to establish the company's negligence through such knowledge.—P. 509.

9. Same.

In an action against a mining company and its foreman for personal injuries caused by the falling of a boulder in the stope of a mine, in which plaintiff was working under the direction of such foreman, who also performed the duty· of inspection and testified to having inspected the stope about an hour before the accident, evidence that other employees, in· passing the boulder about the time of such inspection, observed a crack behind the rock, was admissible as supporting plaintiff's charge of negligence.—P. 509.

10. Practice in Civil Actions—Instructions—Ignoring Issues.

Tendered instructions limiting the scope of inquiry as to negligence, to the subject of timbering the sides of the stope of a mine, in which plaintiff was employed, were fatally defective, and properly refused, where the complaint also charged defendant with having knowledge through its foreman of the dangerous condition of a projecting boulder, the falling of which caused the injury.—P. 510.

11. Practice in Civil Actions—Master and Servant—Injury to Servants—Instructions.

An instruction, in an action for injuries received by a miner from a rock falling· in a stope, that if the method in which the mining was conducted rendered it impossible to ·timber the sides of the stope, and that such manner of mining was customary at that place, then the failure to do such timbering was not. negligence, was properly refused.—P. 511.

12. Same—Instructions—Conditions as a Whole.

An instruction that the master is required to furnish his servant a reasonably safe place to work in, is not objectionable, as omitting the feature of "ordinary care" in providing such place, when such omission is supplied by another instruction immediately following, on same subject, and the jury are specifically told that all the instructions must be considered together.—P. 512.

**13. Appellate Practice—Matters Not Presented Below.**

It is too late, on appeal, to introduce a new theory, differing radically from that on which the court and both parties proceeded at the trial below.—P. 513.

**14. Practice in Civil Actions — Instructions — Construed as a Whole.**

An instruction that, in deciding whether the danger resulting in plaintiff's injury was one of common knowledge,. such as he should have observed, and was, therefore, a risk of his employment, the jury might use their own experience and knowledge, based upon similar conditions, and that they might use their judgment as to what a reasonable and prudent man would discover to be dangerous, was not prejudicial, where other instructions stated the law correctly, and required the jury to govern themselves by the evidence.—P. 515.

**15. Practice in Civil Actions—Instructions—Ambiguous and Uncertain—Cured by Others.**

An instruction stating the law incorrectly is seldom remedied by another instruction announcing the law correctly; but where an instruction states the law correctly so far as it goes, being merely insufficient, ambiguous, or uncertain, the defect may be cured by other instructions upon the same subject embraced in the charge.—P. 516.

*Appeal from the District Court of Teller County.*
*Hon. William P. Seeds, Judge.*

Action by A. J. Ellison against The Stratton Cripple Creek Mining and Development Company and its foreman Bradford. From a judgment for plaintiff, defendant company appeals.

*Affirmed.*

Messrs. McALLISTER & GANDY, Mr. RALPH HARTZELL, Mr. WM. E. HUTTON, and Mr. BRUCE B. McKAY, for appellant.

Mr. E. C. STIMSON and Mr. TULLY SCOTT, for appellee.

On and prior to August 9th, 1902, appellee, who was plaintiff below, was employed by appellant, defendant below, to work in appellant's mine in Crip-

ple Creek district, Teller county. On the date mentioned, a large rock resting in the wall of the stope where appellee was working, became loosened and fell a distance of upwards of twelve feet, inflicting the injury complained of.

The stope referred to consisted of an upraise of from forty to fifty feet in height, terminating at the surface. The bottom of the stope was nearly square, having dimensions of about twenty-five to thirty feet each way. It projected upward perpendicularly from twelve to twenty feet and then widened in the form of a funnel from thence to the surface; being, according to Bradford's testimony, 120 to 130 feet one way at the top, and 100 to 110 feet the other way at the top. This stope was thus formed in the process of mining, which process was still going on; that is to say, ore and waste were being broken at the upper rim or portion of the stope and falling or being shoveled to the bottom. From the bottom of the stope or floor the ore and waste were shoveled into a chute leading to a lower level of the mine, then trammed to a shaft and hoisted to the surface.

There was no timbering in the stope, or other device to prevent the falling of loose ore or rock. The day shift usually broke the rock by the use of dynamite and picks; and the night shift, which went to work at 4:00 p. m., generally cleared down the sides with picks and shovels, causing such portions of the loose ore and waste as had not already fallen to slide down to the floor of the stope; then they descended to this floor and proceeded to shovel the same into the chute above mentioned. But, as appears in the opinion, this was not the course pursued by appellee on the day of the injury.

At the top of the perpendicular portion of the stope there was a sort of shelf or bench, and the rock which caused the accident, being several tons in

weight, constituted a portion of this shelf or rim; it projected out some distance, and had been allowed to remain partly because it was useful in guiding the loose ore and waste from above as it slid down, causing it to fall at a more desirable place on the bottom of the stope.

Bradford, the foreman in charge of the mine for appellant, was also made a defendant to the action, and judgment was entered against him as well as against appellant, but he did not join in prosecuting the appeal.

Bradford gave special attention to the sides of the stope, noting their condition, and he himself says that he inspected this portion of the mine "twice or three times in the forenoon and probably two or three times in the afternoon," on the day of the accident; such inspection being for the purpose of seeing that "the ground was standing all right and sound." He knew of this particular rock and had frequently seen it before the accident happened.

Verdict was rendered and a judgment entered for plaintiff, to reverse which judgment the present appeal was taken.

Mr. JUSTICE HELM delivered the opinion of the court:

A preliminary question is presented by the record. Before filing an answer or otherwise pleading to the complaint, appellant interposed a petition for removal of the cause to the federal court of this district. His application was denied and such denial constitutes one of the grounds relied on for reversal.

The petition for removal was based upon the theory that the cause of action or controversy involved in this case is separable with reference to the two parties joined as defendants. And that although Bradford was a citizen of Colorado, appellant being

a Wyoming corporation, was entitled to such removal. If this contention were true; that is to say, if the complaint showed on its face a separable controversy, the application should have been allowed and the cause transferred to the federal court.

In determining whether an application for removal to that court under such circumstances, shall be allowed, reference must be had exclusively to the complaint itself. And, unless that pleading on its face shows the existence of such ground for removal, the application was properly denied. For under the authorities, the matter constituting ground for removal in cases like this cannot be supplied by judicial knowledge or by subsequent pleadings. This proposition is too familiar to require the citation of authorities. But, see *State v. Island Lime Co.*, 117 Fed. 777; *Mountain View M. & M. Co. v. McFadden*, 180 U. S. 533.

The negligence causing the accident is charged in the complaint against both appellant and the other defendant, Bradford, its superintendent or foreman. Besides alleging that Bradford had actual knowledge of the unsafe and dangerous condition of the rock immediately causing the accident, but negligently failed to take such steps as were reasonably required to avoid the danger, the complaint also charged that the stope wherein appellee was injured was by carelessness and negligence in mining rendered dangerous and unsafe and was negligently maintained in such condition, under the direction of appellant's superintending officers and with the knowledge and consent of appellant. The same knowledge and acts or omissions are, in effect, charged against both, and the same evidence would be required in support thereof.

Whether separable actions could be maintained against appellant and Bradford need not be deter-

mined; for there is no doubt that the matters alleged constitute such concurrent acts of negligence against them as are sufficient to defeat the application for removal.—*Dougherty v. A. T. & S. F. Ry. Co.,* 126 Fed. 239; *Chesapeake & O. Ry. Co. v. Dixon,* 179 U. S. 133; *Weaver v. Northern Pac. Ry. Co.,* 125 Fed. 155.

It is argued that appellee was guilty of contributory negligence; also that. the injury was incidental to one of the ordinary risks of his employment.

Appellee was a common miner. Although he had been employed by appellant for six months preceding the accident, yet it was practically only when the stope was first broken through to the surface and during the first three months of this period that he worked therein. With the exception of three-quarters of an hour in finishing out a day shift, he had not been at this portion of the mine for a month or six weeks; during the latter period he was employed below the stope at what was called the tunnel level. On this occasion he was told first to rake off some dirt on the west side of the stope near the top, and then to proceed to the platform or floor for the purpose of shoveling ore or waste into the chute. The rock that fell, causing the injury, was on the north side of the excavation or pit, and at a portion thereof with which appellee was not at all familiar. After about one hour spent in raking off dirt on the west side he proceeded to obey the latter portion of the order given him; but in reaching his place at the bottom or floor of the stope or pit, he did not pass downward from the surface in such a way as to give him an opportunity to observe the present conditions in the vicinity of the rock or boulder mentioned; on the contrary, he reached the floor indirectly through a separate shaft in some way connected therewith.

He at once began shoveling, and had no opportunity to investigate even his immediate surroundings, as the accident happened when he had been at work but twenty or thirty minutes. He was subject to the direct orders of Bradford, the foreman, and removed from where he had been working at the tunnel level to the place where he was injured on Bradford's command so to do.

The subjects of contributory negligence by appellee and the risks he assumed were fairly presented in the charge of the court. The jury must have concluded that he was not guilty of such negligence, and that his injury did not arise from any risk assumed by him. And while a different conclusion might well have been reached upon the evidence, we do not feel warranted in disturbing the verdict.

A satisfactory consideration of the remaining questions argued will be aided by a more complete statement of the specific issue touching appellant's negligence. This negligence is twofold, as averred by the complaint. (1) That the stope or pit where the accident occurred had been carelessly and negligently mined in that no timbering had been done; and that the ground, after being so negligently broken, had been allowed to remain without supports in a dangerous and unsafe condition; also that such carelessness and negligence, together with the dangerous and unsafe condition produced thereby, occurred with the knowledge and consent of appellant, and under the direction of its superintending officers. (2) That on and prior to the day of the accident, Bradford, appellant's foreman in charge, was fully advised of the loose, unsafe and dangerous condition of the boulder that fell, producing the injury, and of the wall to which it was attached, and that he "carelessly, knowingly and intentionally caused and permitted said condition to so be and remain."

These allegations sufficiently charge negligence against appellant, as well as against its foreman, Bradford, in so excavating or mining the stope or pit wherein appellee was injured as to render it dangerous, and in maintaining the same in such dangerous condition. The issues thereon were submitted to a jury and their judgment upon the conflicting testimony and the credibility of the respective witnesses will be accepted. There is evidence to support the jury's finding, and the verdict is not against the weight thereof to such an extent as would justify interference by us.

But counsel for appellant insist that certain testimony was incompetent and should not have been received; also that error was committed in the giving and refusing of instructions whereby the jury may have been misled.

While Bradford is designated in the record as "foreman," he had entire charge of this portion of the mine; he had full control of the employees and directed their movements; and so far as the matters involved in this controversy are concerned, his duties and powers seem to have been as full and extensive as those of a superintendent or manager. He was giving special attention to the mining operations in and about this particular pit or stope. He inspected the portion thereof in which appellee was injured, at least four times a day, sometimes more often. On the day of the accident he made such inspection twice or three times in the afternoon; the last of these inspections being "somewhere around" 3:00 p. m. He was familiar with this particular projecting rock or boulder and some two weeks previous to the accident ordered its removal; but he testified that this order was not based upon the belief that the rock was loose or liable to fall; and that on August 9th, when the accident occurred,

he did not know that it was loose or cracked or in such a condition as to endanger miners working below.

The testimony of Lanterman and Robush, challenged by counsel, related to Bradford's previous instructions to remove the boulder. The former stated that he received such an order from Bradford about three weeks before the accident; the latter testified that on the day after the accident Bradford asked him why he did not shoot down the boulder as he had previously ordered him to do. Bradford himself, being interrogated on this subject, admitted giving the instruction to Lanterman, and explained that his statement to Robush was a mistake; that for the moment he thought the order had been given to Robush.

It is strenuously argued that the testimony of Robush touching the foregoing conversation with Bradford the day after the accident, constitutes grievous error and is, alone, sufficient ground for reversal. It is not necessary for us to respond to counsel's elaborate argument and citation of authorities on the proposition that these statements by Bradford were made so long subsequent to the accident as not to be a part of the *res gestae.* We observe first that in view of the denial by Robush that any such order was given him, it is hardly reasonable to suppose that appellant was prejudiced by the admission of this conversation. But, be that as it may, certain it is that for another reason appellant could not have been so prejudiced.

This testimony was offered for the purpose of showing that Bradford, previous to the accident, ordered the rock or boulder removed; to establish this fact the statement of Robush was wholly unnecessary. Lanterman, to whom the order was given, had already testified to the giving of the same, to-

gether with the time and circumstances connected therewith. Bradford himself does not dispute Lanterman; on the contrary, as we have already seen, he admits giving the order, states his reasons for so doing, and explains his mistake in broaching the subject to Robush.

It follows, therefore, that if we concede the admission of this testimony to have been error, it was error wholly without prejudice; the fact upon which it bore being otherwise fully established and uncontradicted.—*Portland G. M. Co. v. Flaherty,* 111 Fed. 312.

The testimony of Lanterman, above mentioned, reciting the order so given him by Bradford previous to the accident, was admissible under the rule that declarations of a superintendent or foreman, when they tend to show knowledge of the danger prior to the accident, may generally be received in evidence. —8 Ency. of Ev. 544; *Colo. City v. Liafe,* 28 Colo. 474. This testimony tended to show knowledge on the part of Bradford of the unsafe conditions allowed to exist in the vicinity of the place where appellee was injured and also to establish appellant's negligence through such knowledge. And it was for the jury to draw such inference from the fact that Bradford gave the order in question as they deemed legitimate, also considering Bradford's testimony explaining his action and such other evidence as bore upon the subject.

The testimony of the witnesses Cochran and Acomb, also objected to, referred to the condition of the rock or boulder on the day of the accident. These men were a part of the day shift that was relieved by the night shift on which appellee was injured. They quit work at 4:00 p. m. Cochran states that in leaving the mine at this time he passed by the rock and saw that it was cracked. Acomb

states that "probably an hour or an hour and a half" earlier in the day—that is, about 2:30 or 3:00 p. m.— he noticed a large crack behind the rock.

Evidently the crack thus observed was of somewhat recent occurrence. The testimony of these two witnesses tended to show that by reason of disintegration or cracking, the boulder had become loosened and more liable to fall and injure those working on the floor of the stope; it likewise tended to support the claim of negligence; for what these men saw incidentally, Bradford, who, according to his own statement, performed the duty of inspection, should have seen. And it will be remembered that he testified to having inspected this portion of the stope several times that day, the last inspection being "about 3:00 o'clock," just before or shortly after Robush says he observed the crack behind the boulder; though, according to Bradford, this boulder was then covered with dirt and, therefore, not visible.

The objection of counsel, based upon the admission of the testimony of these four witnesses, must be overruled.

This brings us to the demand for reversal of the judgment for error in charging the jury.

Counsel for appellant call attention to assignments of error touching eight requests for instructions, tendered by them and refused by the court. But they do not press this challenge save as to two of these requests with any considerable earnestness. The requests referred to are in the main defective, inapplicable to the facts, or sufficiently covered by the charge as given to the jury, and we will only notice the two specially argued.

Request "one," thus refused, informed the jury that appellant was only charged with negligence in a single specified particular, to wit, failing to timber

the sides of the stope wherein appellee was working at the time of the injury; and that appellee was not entitled to recover for any other negligence of appellant that might have been shown in the case. Whereas, as we have seen above, appellant was also charged with having actual knowledge, through its foreman, of the loose, unsafe and dangerous condition of the projecting rock or boulder, the falling of which caused the injury; and of carelessly, knowingly and intentionally permitting the same to remain in that condition. It is clear, therefore, that this request was fatally defective and the court would have erred had he made it a part of his charge.

Appellant's request numbered "two," among other things, informed the jury that if they believed from the evidence that the method in which the mining was conducted rendered it impossible to timber the sides of the stope, and that such "manner of mining at that place was customary," then the failure to do such timbering was not negligence and their verdict must be for defendant. The viciousness of this feature of the request is so apparent as to render extended comment unnecessary. Like the preceding request, it limits the scope of the inquiry touching negligence to the one subject of timbering; it then permits defendant to establish a custom as to the manner of mining in this particular stope; and it directs the jury to return a verdict for defendant if they find that this manner or custom rendered timbering impossible.

But it is contended that the sixth instruction given by the court is fatally defective and is alone sufficient ground for reversal. This instruction charges the jury that the master should furnish and maintain a reasonably safe place for his servant to work in; and that if he delegates the performance of this duty to an agent who is negligent in furnishing

such place and the employee or servant is injured through such negligence without fault on his part, the master is liable. The specific objection is that the instruction omits the feature of ordinary care; that is to say, the jury may have concluded from the language employed that the master was bound to furnish a reasonably safe place *at all hazard;* whereas, he was only bound to use reasonable or ordinary care in providing such place.

We may accept the suggestion and assume that this instruction, standing alone, would be subject to criticism. But it was the duty of the jury to consider the charge as a whole; dealing with the different instructions in relation to each other. And they were so specifically directed in this instance, for by paragraph 16 the court told them that no one of the instructions contained all the law of the case, and that all of them must be read and considered together.

Instruction seven, immediately following the one challenged, continues the definition of negligence by the master; it deals with the same subject, to wit: the providing of a safe place for the employee to work in, as well as with the subject of maintaining such place in a condition of reasonable safety; and it supplies the feature supposed to have been omitted from the sixth instruction. It says, among other things, that the master is under a duty to *"take reasonable means* to maintain the safety of the place where his employees are at work, by inspection or otherwise." Also, that "any failure on the part of the employer *to take reasonable care* to secure a *reasonably safe place* in which his employees shall work," is negligence by the employer.

These two instructions define the duty of the master in the premises, and, taken together, show clearly that only reasonable or ordinary care is re-

quired on his part in furnishing and maintaining a safe place for the servant to work in. We think the jury must have so understood the charge and could not have been misled.

The request of counsel for reversal on the ground that these instructions should not have been given at all, because the question of a safe place for the employee to work in was not within the scope of the issues on trial, must be denied.

The trial was conducted throughout upon the theory that this feature existed in the case; no objection being interposed thereto from the beginning to the end. Appellant itself expressly recognized this element as within the issues; its requests numbered 5, 6, 7, 9 and 12, for instructions to the jury, all deal to a greater or less extent with the subject and are based upon the assumption that it was before the court. Moreover, errors are assigned in this court upon the refusal to give these requests and such errors are argued in appellant's opening brief. And no intimation was given to the court below on behalf of appellant, either through an instruction asked or otherwise, that the question of a safe place for appellee to work in was not a proper one for consideration by the jury.

The view now urged was first sprung by a supplemental brief tendered here over two years subsequent to the filing of appellant's original argument, and nearly two years after appellee's answering brief had been filed.

Under these circumstances, it would be manifestly unjust as well as improper for us to allow this question to be now brought into the case. Upon appeal it is too late to introduce a new theory differing radically from that on which the court and both parties proceeded at the trial below.

But it is doubtful if the proposed new theory

could have been applied even had it been properly and seasonably presented.   We do not admit that the definitions in *Poorman Silver Mines v. Devling*, 34 Colo. 142, and other cases cited, cover the conditions here shown.

It will be remembered that while the pit, as Bradford prefers to call the excavation, was from 110 to 130 feet in length and width at the top, its dimensions at the bottom were only 25 to 30 feet each way.   It will also be remembered that while ground was being broken at the top, such was not the case at the bottom.   On the contrary, rising from the bottom or floor to a height of from 12 to 20 feet were perpendicular walls; these walls were not being disturbed and for months had not been broken or changed; this portion of the pit thus formed a permanent receptacle for ore and waste preliminary to the transmission thereof through the chute to a lower level.   Thus the lower portion of the excavation in effect constituted a permanent room or place wherein the day shift worked part of the time.   And as to appellant, under the specific circumstances above narrated, it might, perhaps, fairly be said that this room or place was within the rule announced by the instructions challenged.

But it is not now necessary to so hold, and we prefer to dispose of the subject upon the ground above stated.

The challenge with reference to instruction eleven, is the final objection deemed worthy of consideration.   This paragraph, coupled with the two paragraphs immediately following, viz.: numbers twelve and thirteen, cover the portion of the charge dealing with the single subject of the assumption of risk by appellee.   Paragraph twelve informs the jury that if appellee knew, or had equal means of knowledge with appellant, of the condition of the

stope and of the danger incident to working therein, he assumed the risk and could not recover.   By paragraph thirteen that body are told that plaintiff assumed all the risks naturally and reasonably incident to the service, and all the dangers that could reasonably be anticipated from defects in the place where he was working, in so far as such defects were obvious and could be known by ordinary diligence; and that if he suffered injury by reason of such assumed risk, there could be no recovery.

Instruction eleven is awkwardly worded; it is not entirely free from ambiguity; its usefulness is doubtful and we are not surprised that counsel complain.   But we do not see how appellant could have been prejudiced thereby.

Instructions twelve and thirteen, as above shown, informed the jury that appellee took all of the risks naturally incident to service in the place where he was working, from defects that were reasonably obvious; also that if he knew, or had equal means of knowledge with appellant, of such dangers or risks, he could not recover.   Instruction eleven deals with the manner of determining such risk; it says that in deciding whether the danger resulting in appellee's injury was one of common knowledge, such as he should have observed, and was therefore a risk of his employment, they may use their own experience and knowledge based upon similar conditions; it also permits them to use their judgment as to what a reasonable and prudent man would discover to be dangerous about the work in which appellee was engaged.

But the experience and knowledge and judgment here referred to are not made the exclusive test.   By paragraph twelve and elsewhere throughout the charge, the jury are required to govern themselves by the evidence.   And this instruction simply per-

mits that body to bring their own experience, knowledge and judgment to bear upon the subject of the risk assumed by plaintiff, in the light of accompanying facts and circumstances as shown by the evidence adduced; that is to say, the jury are permitted to decide whether the risk taken by plaintiff was one of such common knowledge as that he should have observed the danger by weighing the evidence in the light of their general experience and knowledge aided by their judgment.

An instruction stating the law incorrectly is seldom remedied by another instruction announcing the law correctly. But where an instruction states the law correctly so far as it goes, being merely insufficient, ambiguous or uncertain, the defect may be cured by other instructions upon the same specific subject embraced in the charge.—Blashfield's Instructions to Juries, § 391, and numerous cases cited; *Portland G. M. Co. v. Flaherty, supra; McClelland et al. v. Burns,* 5 Colo. 394; *Dozenback v. Raymer,* 13 Colo. 454; *Thatcher v. Rockwell,* 4 Colo. 408.

The judgment of the district court will be affirmed.                                    *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE MAXWELL concurring.