### ADAMS v. SHIRK et al.

(Circuit Court of Appeals, Seventh Circuit. October 2, 1900.)

#### No. 679.

1. APPEAL—SPECIFICATIONS OF ERROR.

A specification of error in holding or refusing to hold as stated, where such rulings were made in giving or refusing instructions, should state such fact, and comply with the requirement of rule 11, governing specifications of error which relate to the charge of the court.

2. SAME—QUESTIONS NOT PRESENTED TO TRIAL COURT—MOTION FOR DIRECTION OF VERDICT.

A general motion, made at the conclusion of the plaintiff's evidence, for direction of a verdict for defendant, unaccompanied by a statement or suggestion of reasons for it, may properly be overruled, and raises no question for review in the circuit court of appeals.

3. LANDLORD AND TENANT—ACTION FOR RENT—DEFENSES.

The refusal of a lessor in a ground lease, who holds as security policies of insurance on the buildings owned by the lessee, to produce such policies for assignment to one to whom the lessee has sold the buildings and assigned the lease without the lessor's consent, constitutes no defense by the assignor to an action against him for accrued rent, where there has been no loss under such policies.

4. SAME—CONSTRUCTION OF LEASE—RIGHT OF ASSIGNMENT.

The lessee under a ground lease sold the buildings, and assigned the lease to another, with the consent of the lessors, the assignee expressly covenanting that he assumed personally all the "terms, covenants, and agreements in said lease contained," among which was an agreement that the lessee should remain bound for the rent during the term, unless expressly released by the lessors on the acceptance of a substituted tenant. The lessors also executed an agreement at the same time to accept as a substitute any future assignee who should be a "responsible person," and "satisfactory" to them. Held, that, to entitle the assignee to such substitution, he was bound to show to a reasonable certainty that his proposed transferee was pecuniarily responsible, and of such good repute as should, in fairness, render him satisfactory to the lessors, and that, in the absence of such showing, the lessors must be regarded as justified in refusing to recognize such transferee as a tenant, or to accept rent from him unless paid on behalf of the recognized lessee.

5. SAME—UNAUTHORIZED ASSIGNMENT OF LEASE—RIGHTS OF LANDLORD.

A lessor cannot be compelled by the lessee, by an unauthorized assignment of the lease, to exercise the right of re-entry and forfeiture given him by its terms, but may lawfully treat the assignee as in possession under the lessee, and hold the latter to his direct liability under the contract for the payment of the rent.

6. ARREST OF JUDGMENT—GROUNDS OF MOTION.

A motion in arrest of judgment cannot be based on an alleged variance, its only office being to challenge the sufficiency of the facts of record, apart from any showing by bill of exceptions, to support the judgment.

**7. ACTION—OBJECTION TO FORM—WAIVER.**
An objection that a cause of action stated in a declaration at law is cognizable only in equity must be promptly made to be of avail, and will not be considered when first taken in a motion in arrest of judgment.

In Error to the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

This action was brought by the defendants in error against the plaintiff in error, as assignee of a ground lease, to recover rent which accrued after the defendant had assigned to another. One of the defenses insisted upon was that the assignee of a leasehold, "coming in only by privity of estate, and not by privity of contract, remains liable for the rent only so long as he remains owner of the term." The principal facts are these: The property, situated on the northeast corner of Clark and Kinzie streets, Chicago, with a frontage of 100 feet on Clark street, and having upon it a six-story brick building, a part of which was a theater, was owned by Emma L. Smith. In December, 1889, she and her husband, Perry Smith, mortgaged the property to the Northwestern Mutual Life Insurance Company to secure a loan of $125,000. The debt was paid and the mortgage released in April, 1895. In March, 1891, Elbert W. Shirk, one of the defendants in error, bought of the Smiths the land, not including the building, paying therefor $25,000, and assuming the mortgage to the insurance company; and at the same time executed to the Smiths a ninety-nine years lease of the land, for which they agreed to pay an annual rental of $9,000, to discharge all taxes and rates, and to keep the property insured for $100,000 by policies payable to Shirk, as security for the payment of the rent. The lease contains the following provisions touching assignments thereof:

"It is further covenanted and agreed by and between the parties hereto that the said parties of the second part, their heirs, executors, administrators, or assigns, shall not nor will during the said term assign, transfer, or set over, or otherwise by any act or deed procure their interest in the said premises and the improvements thereon, or on any part thereof, to be assigned, transferred, or set over unto any person or persons whatsoever, except by way of mortgage or trust deed as herein provided, except upon the written consent of the party of the first part, his heirs, executors, administrators, or assigns. If said lessees desire to sell, and the proposed assignee shall not be acceptable to said lessor, the question of such purchaser's standing and suitableness as a tenant shall be submitted to two disinterested persons, one to be chosen by each of the parties hereto; and, in case of their inability to agree, the two so chosen shall choose a third to act with them, and the written report of a majority of the three shall be binding upon the parties hereto; and, if such report is in favor of the assignee's standing and suitableness as a tenant, said lessor shall be bound to assent to such assignment, and, in case he does not, the said lessee may assign this lease to such proposed purchaser without the assent of such lessor. It is further agreed that the leasehold interest hereby created and the building herein mentioned may be conveyed in trust or by mortgage as security for a sum not exceeding two-thirds of the value of the building thereon, or to be erected thereon, notice in writing containing the name of the trustee or mortgagee being first given to said party of the first part, his heirs, executors, administrators, or assigns. And it is expressly covenanted and agreed by and between the parties hereto that any assignment made by the parties of the second part, or their assigns, of their interest in and to said premises, without complying with the conditions aforesaid, shall be absolutely null and void, and without effect. And it is further covenanted and agreed by and between the parties hereto, for themselves and their respective heirs, executors, administrators, and assigns, that, in the event that any assignment, trust deed, or mortgage shall be made (after complying with the conditions hereinbefore set forth), the assignment, or mortgage, or trust deed shall be subject to all the covenants, agreements, provisions, and conditions contained in this lease. And it is further covenanted and agreed by and between the parties hereto that, in the event that any assignment or mortgage be made (after complying with the conditions hereinbefore set forth),

the said parties of the second part shall still be and remain liable and subject to all the covenants, agreements, and conditions in this lease contained, unless by an instrument in writing, under seal, and duly acknowledged, said lessor shall consent to the substitution of said assignee and the release of said lessees. It is further provided that, if this lease shall be assigned without such substitution and release, then, in case of the default of any assignee hereof in the payment of the rent reserved hereby or in performance of any of the covenants or agreements herein contained, the said party of the first part shall at once notify the said parties of the second part, their heirs, executors, or administrators, of such default. It is further agreed that, in the event that any assignment, sale, or conveyance, after complying with the conditions hereinbefore set forth, shall be made by said parties of the second part, the same shall be evidenced by an instrument in writing, duly executed under seal, and acknowledged by the assignee, and duly recorded in the recorder's office of said county; and said instrument in writing whereby such interest shall be sold, assigned, or conveyed shall contain a clause sufficient in law to the effect that the assignee or assignees, purchaser or purchasers, and his or their heirs, executors, administrators, and assigns, personally accept and assume all the terms, covenants, and agreements in this lease contained, and will personally comply with them, and be bound by them, and will keep and perform all the covenants and agreements in this lease contained."

There is also a provision for forfeiture of the lease for violation of any of the covenants or agreements contained in it. Later, in 1891, Shirk conveyed a two-ninths interest to his brother, Milton Shirk; a like interest to his sister, Alice S. Edwards; and three-ninths interest to his mother, Mary Shirk. This was in fulfillment of the purpose of the purchase, in which he acted for himself and the others named; but there was nothing in the conveyance made to him by the Smiths to indicate that others were interested in the purchase. In August, 1894, Mary Shirk died testate. By her will she gave and devised all her estate, real and personal, to her three children named, as trustees, to pay debts and legacies, and the remainder to be kept intact, and together as one fund, the income of which should belong to the three children for their own use, until the expiration of the trust on the death of the last survivor of the three, when the principal should be divided among their children then living per stirpes. The will also gave the trustees full power to sell, convey, and rent real estate in which the testatrix had an interest, and at their discretion to deal with her corporate and other business interests. On December 27, 1895, Perry Smith, for himself and as administrator of his deceased wife, transferred and assigned to J. McGregor Adams the leasehold created by the 99-year lease referred to, and also sold and transferred to him all the buildings and improvements situated upon the lots, and all personal property therein and thereon, consisting of chairs, carpets, scenery, etc., belonging to the building and theater. In that assignment the stating part is as follows:

"This indenture, made this twenty-seventh day of December, A. D. 1895, between Perry H. Smith, Jr., in his own right, and also as administrator of the estate of Emma Louise Smith, deceased, party of the first part, and J. McGregor Adams, party of the second part, witnesseth that," etc.

The testimonium and the signatures to it are as follows:

"Executed at Chicago the day and year first above mentioned.
                                   "Perry H. Smith, Jr.    [Seal.]
                                   "Perry H. Smith, Jr.,   [Seal.]
        "Administrator of the Estate of Emma Louise Smith, Deceased.
                                   "J. McGregor Adams.  [Seal.]"

It also contains the following clause:

"And the said party of the second part, for himself, his heirs, executors, administrators, and assigns, personally accepts and assumes all the terms, covenants, and agreements in said lease contained, and will personally comply with them, and be bound by them, and will keep and perform all the covenants and agreements in said lease contained."

After the acknowledgment is appended the following:

"We hereby consent to the foregoing sale and transfer of the lease therein mentioned.
      E. W. Shirk. [Seal.]
      "Milton Shirk. [Seal.]
      "Alice S. Edwards. [Seal.]"

This transfer to Adams was recorded January 2, 1896.

On January —, 1896, there was deposited with the Northern Trust Company a paper which reads as follows:

"Chicago, Illinois, December 27th, 1895.

"J. McGregor Adams, Esq.—Dear Sir: In consideration that you have to-day taken an assignment of the interest of Perry H. Smith, Jr., and of the estate of Emma L. Smith, in the lease bearing date of March 31st, 1891, executed by Elbert W. Shirk to said Emma L. Smith and Perry H. Smith, Jr., of lots six (6), seven (7), and eight (8) in block two (2) of Wolcott's addition to Chicago, situated at the northeast corner of Clark and Kinzie streets, in said city, and have assumed all liabilities of the lessees thereunder: Now, therefore, we, the present owners of the fee of said land, do hereby agree that, in case you shall, at any time in the future, assign the said lease and your interest therein to some responsible party who shall be satisfactory to us, we will, on the assumption by such assignee of all your liability under said lease, consent to the substitution of said assignee, and the release of yourself and your estate from all further liability thereunder. This document is to be held by the Northern Trust Company, and not to be delivered, except upon the joint order of yourself and ourselves. Neither this document nor any copy thereof is to be recorded. If the same or any copy shall be recorded, this document shall thereby become void.
      E. W. Shirk.
      "Milton Shirk.
      "Alice S. Edwards."

Adams paid the ground rent up to and including the first quarter of 1897. In February, 1897, he sold and transferred to one Petterson the unexpired term of the ground lease, and also the improvements and personal property he had purchased in connection therewith from the Smiths. This action was brought to recover from Adams, as the assignee of the Smiths, upon that lease, for rent accruing for the last three quarters of 1897.

The twenty-first, twenty-second, twenty-third, twenty-fourth, and twenty-fifth specifications of error are as follows: "(21) The court erred in not directing a verdict for defendant because plaintiffs refused to allow the insurance policies to be assigned to Petterson, and also refused to submit that question to the jury, and in refusing to instruct the jury, as requested by defendant: 'That if the jury believes from the evidence that Shirk refused to produce the policies of insurance upon the property in order that they might be assigned to Petterson, his doing so was a breach of the provisions of the lease in a material part, and plaintiffs cannot recover.' (22) The court erred in refusing the request of the defendant that it instruct the jury: 'That, if Petterson made a tender to plaintiffs in June, 1897, of the rent due for the second quarter of 1897, then as to that quarter the jury must find in favor of the defendant.' (23) The court erred in refusing the request of the defendant that it instruct the jury: 'That if Petterson made a tender to plaintiffs in May, 1898, of the rent for the third and fourth quarters of 1897, then that tender released Adams from liability to pay the rent, and the verdict of the jury as to those two quarters must be in favor of the defendant.' (24) The court erred in charging the jury that there must be an opportunity given plaintiffs to investigate for themselves the responsibility of the proposed tenant before arbitration concerning the tenant could be demanded, being especially that part of the charge which said: 'But if, on the other hand, as they claim, as Mr. Shirk has testified, clearly and distinctly, there was an offer of this man Petterson to them, and their offer to make the investigation, and then they failed to furnish Mr. Shirk the information upon which to make that investigation, it was equivalent to a refusal to furnish him any opportunity to state whether he would accept this man or not, and he was not put to an option,—to the exercise of an option; and the subsequent transactions by which they wrote a letter to him after he

had left the city—after he was known to have left the city—would amount to nothing, and would not be considered.' (25) The court erred in instructing the jury that it must find for the plaintiffs for the amount of the claim unless the defendant furnished a satisfactory tenant or assignee of the term, being particularly that part of the charge in which the court said: '* * * And unless you are satisfied by the preponderance of the proof in this case that Mr. Adams furnished a person whom he believed to be satisfactory, and that the preponderance of the proof shows a refusal by Mr. Shirk in behalf of the plaintiffs to make the investigation, and to exercise a judgment on the matter whether this was a satisfactory person or not, then the defense fails, and you must find for the plaintiffs for the amount claimed.' "

William Burry, for plaintiff in error.

Frederic Ullmann, for defendant in error.

Before WOODS and GROSSCUP, Circuit Judges, and KOHL-SAAT, District Judge.

WOODS, Circuit Judge, after stating the case, delivered the opinion of the court. ,

But few of the numerous specifications of error insisted upon present any question. The first, second, third, fifth, and seventh allege error in the admission or exclusion of evidence, but do not, as required by rule 11 (31 C. C. A. cxlvi., 90 Fed. cxlvi.), quote the substance of the evidence admitted or rejected. The fourth conforms to the rule in that respect, but the evidence referred to was of so little importance that a ruling one way or the other upon the motion to strike it out could not have been a material error. The tenth to eighteenth and twenty-ninth to thirty-fourth specifications each allege error of the court in holding or not holding as stated, but, if the court so held, it must have been in giving or refusing instructions, and it should have been so specified. Woodbury v. City of Shawneetown, 34 U. S. App. 655, 20 C. C. A. 400, 74 Fed. 205; Columbus Const. Co. v. Crane Co., 41 C. C. A. 189, 98 Fed. 946, 101 Fed. 55. The eighth, ninth, nineteenth, and twentieth specifications are to the effect that the court erred in not directing a verdict for the defendant; but the eighth the defendant waived by adducing further evidence after the ruling was made. The ninth specifies no particular in which there was supposed to be a lack of evidence; and while, in the nineteenth, the direction was asked "because of tender of all the rent sued for by Petterson to plaintiffs," and in the twentieth "because no notice was given by the plaintiffs to defendant of nonpayment by Petterson of rent sued for," it does not appear that either reason was suggested to the court at the time or before the motion for a peremptory instruction was denied. The bill of exceptions states simply that, all the evidence being in, "thereupon the defendant moved the court to hold the evidence insufficient to sustain the action, and to direct a verdict for the defendant"; but such a general motion, unaccompanied by a statement or suggestion of reasons for it, may properly be overruled. A practice is not to be approved which will permit of the presentation for review by this court of questions which are not shown to have been called to the attention of the trial court. Columbus Const. Co. v. Crane Co., supra; Stewart v. Morris, 37 C. C. A. 562,

96 Fed. 703. The twenty-first specification, instead of being limited to the assertion of a single error, as rule 11 requires, presents three questions, which, though closely akin to each other, are yet distinctly different. There was, however, no error in refusing the special instruction set out in that specification. By the terms of the original lease the insurance provided for was to be payable to the lessor, and, while a notation upon the policies of the consent of the insurance companies to the assignment of the leasehold may have been necessary, there was apparently no right in any one to ask an assignment of the policies to Petterson; and, even if there was such a right, no loss having occurred, we are not ready to assent to the proposition that the refusal of Shirk to produce the policies for the purpose of assignment is a defense to the action for accrued rent.

What was the effect of the tenders made by Petterson to Shirk depended, perhaps, on other questions and propositions not embraced in the special instructions which were asked and refused. In no event could a tender made by Petterson be of effect unless Shirk, as against Adams, was bound to accept it. If, after his assignment to Petterson, Adams was not responsible for the rent, the question was irrelevant and immaterial, and the refusal of the instruction of no consequence. It could be of importance only upon the theory that Adams remained liable for the rent, but by reason of the assignment, which to that extent Shirk was bound to recognize as valid, he had come into the position of surety for Petterson, and therefore was discharged by the refusal of Shirk to accept the proffered payment. If that relationship of the parties was a question of fact on the evidence, the special instruction asked should have been so framed as to submit the question to the jury. As drawn, the instruction assumes everything essential to the proposition except the fact of tender. If that fact was a defense to the action against Adams, it is equally a bar to the right of the lessors "to proceed against the improvements or against the original lessees." We are of opinion that on the facts disclosed Shirk was justified in rejecting the tender. In the original lease it was stipulated that the lessees and their assigns should make no transfer of the leasehold except by way of mortgage or trust deed except upon the written consent of the lessor. Whether or not, without further stipulation, that restriction would have bound Adams, it is not necessary to consider. A further stipulation was made. He accepted an assignment by which, in express terms, "for himself * * * and assigns personally," he assumed "all the terms, covenants, and agreements in said lease contained," but with the modification expressed in the writing of the same date, signed by the Shirks, that, in case he should thereafter assign the lease "to some responsible person" who should be "satisfactory" to them, they would consent to the substitution of the assignee, and release him and his estate from further liability. Assuming that the document signed by the Shirks was executed upon a sufficient consideration, and became binding, Adams acquired thereby the right to transfer the term to a "responsible party" who should also be satisfactory to the lessors. The effect of that provision, in our opinion, was that, when Adams pro-

posed a transfer to Petterson, he was bound to show to a reasonable certainty that Petterson was pecuniarily responsible, and of such repute for honesty, capacity, and fair dealing as ought to make him satisfactory. Shirk, for himself and his associates, doubtless was bound to act fairly and reasonably, but he was not required to go out of his way to establish, or to convince himself of, the suitableness of the proposed substitute. It was not enough, as indicated by that portion of the court's charge set out in the twenty-fifth specification of error, that Adams should have "furnished a person whom he believed to be satisfactory." It was a question, not of belief, but of actual responsibility and fitness, and, there being in the record no evidence that Petterson was responsible and otherwise of acceptable character, and there having been no arbitration to supply the place of such evidence, all charges that Shirk did not act in good faith become of no consequence. For all that appears in the record, it is to be assumed, as between the parties, that Petterson was not responsible, and in other respects was not one who should have been accepted as a satisfactory substitute for Adams. What the measure of pecuniary responsibility should have been, in the absence of express stipulation, if disputed, would have to be determined according to the circumstances; but, in the absence of proof, it would seem unreasonable that Adams should insist upon the acceptance of a substitute less responsible than himself. Direct evidence on the subject was not offered, but facts are shown which indicate that Petterson was largely indebted to Adams and others, and consequently his responsibility questionable. Shirk was, therefore, as we think, justified in refusing to recognize him as tenant, and in insisting, as he did, that he would accept no rent from him unless paid on behalf of Adams, his recognized lessee. We do not agree that the only remedy of the lessors for the wrongful transfer of the leasehold was a re-entry or other proceeding to forfeit the lease. The putting of Petterson in possession the lessors could not prevent, but they could insist, as they consistently did, that as to them the transfer was wrongful, and that they would regard Petterson as holding for Adams. It may be that, as between Adams and Petterson, the transfer was valid; but it does not follow that the lessors were bound either to proceed to forfeit the lease, or, failing to do so, must be held to have acquiesced in the assignment and the consequent conversion of the primary and absolute liability of Adams into a mere suretyship for Petterson. A forfeiture of the lease was just what Adams greatly desired to accomplish. He had offered to surrender it to Shirk for nothing, and, being denied that privilege, entered upon the negotiations to procure the substitution of Petterson in his place as lessee; but it was not in his power, by the course pursued, to compel the desired forfeiture or his own discharge through the enforced acceptance of a substitute of whose responsibility and fitness he offered then and at the trial no proof. It follows that the instructions asked on the subject of the tenders made by Petterson were properly refused, and that the instructions given of which complaint is made in the twenty-fourth and twenty-fifth specifications of error were more favorable to the plaintiff in error than they need have been.

The twenty-sixth specification has reference to the exclusion of evidence concerning the financial responsibility of one Wylie, to whom Petterson made an assignment of the term. It was properly excluded, because it had "nothing to do with the issue in this case."

The twenty-eighth specification—the last to be considered—is that the court erred in overruling the motion in arrest of judgment. The grounds of the motion, as stated, are:

"(1) The declaration does not state a good cause of action. (2) There is a fatal variance between the allegations of the declaration and proof. (3) There is no jurisdiction of the matter involved in this cause [except] on the chancery side of this court. (4) There is no jurisdiction of this cause in the United States court for want of proper citizenship of the parties."

The second ground is irrelevant. A motion in arrest raises no objection to the evidence (2 Enc. Pl. & Prac. 813), but challenges the sufficiency of "the facts of record, apart from any showing by bill of exceptions," to support the judgment (World's Columbian Exposition Co. v. Republic of France, 33 C. C. A. 333, 91 Fed. 64). The first and fourth are unavailing, because of the sufficiency of the declaration and of the diverse citizenship of the parties there is no ground for question. The objection that the suit should have been on the chancery side of the court would have been formidable if made in time. The bringing of the action at law is justified by the decision in Insurance Co. v. Hanford, 143 U. S. 187, 12 Sup. Ct. 437, 36 L. Ed. 118, but that decision, it is insisted, is a departure from the well-established rule declared in earlier and later cases, such as Fenn v. Holme, 21 How. 481, 16 L. Ed. 198; National Bank v. Grand Lodge, 98 U. S. 123, 25 L. Ed. 75; Furnace Co. v. Withrow, 149 U. S. 574, 13 Sup. Ct. 936, 37 L. Ed. 853; Lindsay v. Bank, 156 U. S. 485, 15 Sup. Ct. 472, 39 L. Ed. 505. It is enough here to observe the settled rule of practice that an objection of this kind must be made promptly, and, if delayed, as in this instance, to the end of the trial, will be overruled. In this case the objection was patent on the face of the declaration, but, so far as appears, it was first brought to the attention of the court by the motion in arrest.

The judgment of the circuit court is affirmed.