## STATE LIFE INS. CO. v. MURRAY.

(Circuit Court of Appeals, Third Circuit. February 13, 1908.)

No. 59.

1. INSURANCE—PAYMENT OF INITIAL PREMIUM—EFFECT—FORFEITURES.

On payment of the initial premium on a life policy there is a contract of insurance for the whole life of the insured, and the insurer's right to terminate such contract for nonpayment of premiums is a forfeiture, which is not favored in law.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, §§ 891–904.]

2. SAME—ESTOPPEL.

Any agreement, declaration, or course of conduct on the part of an insurance company which leads a party honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will estop the company from insisting on a forfeiture claimed under the express·letter of the contract.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, §§ 941–946.]

3. SAME—PREMIUMS—PAYMENT—AUTHORITY TO RECEIVE—QUESTION FOR JURY.

In an action on a life policy, evidence held to warrant a finding that the insurance company was estopped to deny that its soliciting agent, to whom payment of premium had been made, had authority to receive the same on the company's behalf.

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

For opinion below, see 151 Fed. 539.

W. A. Way, for plaintiff in error.

A. B. Reid, for defendant in error.

Before DALLAS and GRAY, Circuit Judges.

GRAY, Circuit Judge. The case brought before us for review by this writ of error was a suit by Mary Murray, the beneficiary under a policy of life insurance, and defendant in error (hereinafter called the plaintiff), against the State Life Insurance Company, the plaintiff in error (hereinafter called the defendant). The defense is, nonpayment of the third semiannual premium, which matured prior to the death of the insured. The terms of the policy provided, among other things, as follows:

"Premiums. In case any premium should not be paid when due, according to the terms of this contract, at the office of the company in the city of Indianapolis, or to agents when they produce receipts signed by the president or secretary, then and in every such case, this policy shall cease and determine, except as otherwise herein expressly provided."

The pertinent facts, as disclosed by the record, are, that the policy in suit was taken out by the plaintiff on the life of her husband; the business was transacted with her son, who was soliciting agent of the defendant company; the policy was for.$2,500, which was delivered to her by her son, as agent of the company, and the first six months' premium of $39.90 was paid to him as such agent, for which she received a receipt from the company, signed by its ·secretary and coun-

tersigned by her son, J. E. Murray, as agent, dated the 31st day of October, 1903; the premium for the next six months falling due on the 29th day of April, 1904, was also paid by the plaintiff to her son, as agent, for which he gave her a temporary receipt, which was replaced shortly after by a receipt from the company in the same form as previously, signed by the secretary and countersigned by the assistant cashier. When the third semiannual payment fell due, the general manager of the company's Pittsburgh office called the attention of the son, who was still the soliciting agent of the company, to that fact, who thereupon applied to his mother for its payment. As there were nearly 30 days' grace yet to run under the policy, the payment was not made until the days of grace had nearly expired, and, on November 26th, the plaintiff paid to her son, as agent, the amount of the premium, for which no receipt was then given her. Upon her repeated request for a receipt, he gave her one out of a book, which she says was marked "binding receipts," signed by the secretary of the company who had signed the previous receipts, and countersigned by J. E. Murray, her son, as agent, who had countersigned the first regular receipt. This receipt was a printed blank, filled in with the name of the insured, the amount of the premium and the date of payment, and numbered in red ink 49,571. At the top and under the name of the life insurance company, was printed in red ink, but not otherwise conspicuous, the following:

"The agent collecting on this receipt has no authority to collect for more than the first year's premium."

The plaintiff testifies that she put this away with the other receipts without observing this notice, and that she knew her son was an agent of the company and he had countersigned a previous receipt as such. It appears by the testimony that Murray was supplied by the company with buisness cards, describing him as special agent, and that these were shown to the mother; also, that he was recognized as such agent by the insurance department of the state of Pennsylvania, on the certification to that effect by the company to the Insurance Commissioner. It is also uncontroverted that the said Murray solicited and wrote the risk, and received, as above stated, the first semiannual premium, and that he was permitted to countersign, as agent, the regular receipt therefor by the company; also, that he received the second semiannual premium, for which no receipt was given for a period of several days, but the payment was thereafter ratified by the company's second official receipt, countersigned by the assistant cashier of the defendant, as above stated. There was ground, therefore, for the inference by the plaintiff, that said receipts might properly be countersigned by her son, as well as by some other officer of the company.

The plaintiff's testimony is not disputed, that no notice had been given to her that her son was without authority to receive the third payment, or that she did not read the first temporary receipt, but supposed that all the receipts were alike. The son never transmitted this third premium to the company, or to any representative thereof, and about two weeks after the payment had been made, as above stated,

the insured died. The company declined payment on the policy, on the ground that the same had been forfeited by the nonpayment of the third and last premium, due prior to the death of the insured; the ground upon which such forfeiture is asserted, is that the son was not authorized to collect premiums after the first year.

The general principles of law applicable to such cases, are not in dispute, and they were correctly stated by the court below in its charge to the jury. Undoubtedly, on payment of the initial premium on a life insurance policy, there is a contract for insurance for the whole life of the insured, and the insurance company's right to terminate such contract for nonpayment of premiums is a forfeiture. Such forfeitures are not favored in the law, and "any agreement, declaration or course of action, on the part of the insurance company, which lead a party honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon a forfeiture, though it might be claimed under the express letter of the contract."

Counsel for the defendant company contend that there was no evidence in this case to warrant a jury in finding that said company was estopped from claiming the forfeiture of the policy. We think, however, the court below were right in submitting to the jury the question, whether, under all the circumstances of the case, the plaintiff was not justified in paying the third and last premium to her son, as agent of the company, who had solicited the insurance, delivered the policy and received payment of the first two premiums, as the duly accredited and recognized agent of the defendant. The whole question is well stated by the court below in its charge to the jury, as follows:

"Now the first question for you to determine under the evidence is: Did she actually pay him the $39.90? Did she pay this money in good faith, believing it was a payment to him as agent of the company? In considering that question, you will determine whether the payment was made by her to him as the agent of the company, or whether the money was entrusted by her to him as her son and her agent to transmit and forward it to the company. This is the first question for you to determine: Whether Mrs. Murray paid this money to him as agent of the defendant company, or whether she gave the money to him as her agent, to pay it to the company through the proper channels? If she paid the money to him as her agent and he failed to pay it over to the company, that would be the end of the case. If she paid it to him as agent of the company, you then pass on to the further question: Whether the course of dealings between Mrs. Murray and this company, in the payment of the other premiums, was such that the company misled or induced her to believe that he was an agent of the company to receive the premiums and thereby misled her into believing that a payment to him was a payment to an agent of the company on the company's behalf."

We do not think the court could have properly withheld these questions from the jury.

The judgment of the court below is therefore affirmed.