KANSAS CITY LIFE INS. CO. v. DAVIS.

No. 8524.

Circuit Court of Appeals, Ninth Circuit.

April 8, 1938.

---

John T. Gose and George B. Gose, both of Los Angeles, Cal., for appellant.

W. W. Hindman and E. Eugene Davis, both of Los Angeles, Cal., for appellee.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

STEPHENS, Circuit Judge.

This is an appeal from a judgment of the District Court in an action brought by appellee on an insurance policy, appellee being the named beneficiary thereof. A jury having been waived, the court gave judgment for appellee for the face value of the policy.

Throughout this opinion we shall refer to the plaintiff, appellant here, as the company, and to the defendant, appellee here, as the beneficiary.

The company appeals upon eighteen assignments of error, but all are determined by our consideration of assignment I which raises, as we hold, the broad question as to whether the judgment is supported by the evidence. Assignment I is based on an exception taken to the denial of appellant's motion for judgment, which motion was made before submission of the case. The motion was not based on the specific ground that there was no substan-

tial. evidence to sustain any other judgment or upon any other specific ground, but was general in form. There is authority that an exception to the denial of such a motion raises no question on appeal. Denver Live Stock Commission Co. el al. v. Lee et al., 8 Cir., 1927, 20 F.2d 531; Henry H. Cross Co. v. Texhoma Oil & Refining Co., 8 Cir., 1929, 32 F.2d 442; Lyle v. Phillips Petroleum Co., 8 Cir., 1934, 72 F.2d. 347; Salt Bayou Drainage Dist. v. Futrall, 8 Cir., 1934, 72 F.2d 940.

■ However, we feel that the better-reasoned cases are those which hold that where, as here, the contention is the broad one that proof as a whole fails to disclose liability, a' general motion. is sufficient to challenge the attention of the court and counsel to the legal point and that, consequently, the denial of such a motion raises on appeal the legal question of the sufficiency of the evidence to support a judgment. The majority of the circuits have taken this latter position. See New York Life Ins. Co. v. Doerksen, 10 Cir., 1935, 75 F.2d 96, which collates the holdings of the various circuits finding that of the ten circuits, only one—the Seventh —has definitely refused to consider a reviewable question raised, while of the remainder, six (First, Second, Fourth, Fifth, Sixth, and Tenth) have held a reviewable question raised '(the Ninth Circuit is by this court thought to follow the same rule).

In our own Circuit the question was considered in Balaklala Consol. Copper Co. v. Reardon, 9 Cir., 1915, 220 F. 584. In that case it was said at page 589: "It does not appear that the request was argued before the court, or that the particular grounds of the motion were at any time specified. It has been held in the Seventh Circuit that such a motion is insufficient to raise a question for review in the Circuit Court of Appeals. Adams v. Shirk, 104 F. 54, 43 C.C.A. 407. We are disposed to assume, however, that the court below passed upon the question which is now presented in this court—that is, whether or not there was sufficient evidence to go to the jury to show the defendant's negligence—and to hold that the motion was sufficient."

Feather River Lumber Company v. United States, 9 Cir., 1929, 30 F.2d 642, 643, is not directly in point, since in that case the defendant made no motion for judgment. However, the following language of the court is indicative of the attitude of this Circuit where the court below has not been misled: "The record shows that both parties' made oral requests for special findings, but such a request without specifying the findings desired does not serve to bring to the court's attention any question of law. In view, however, of the fact that the parties and the court below regarded the requests as preserving a right to review the evidence on appeal, we have given careful consideration to the testimony, and we are of the opinion that it was sufficient to sustain the allegations of the complaint."

In Babbitt Bros. Trading Co. v. New Home Sewing Mach Co., 9 Cir., 62 F.2d 530, 535, the main opinion decided the case on its merits. In a concurring opinion it was said: "This matter cannot be reviewed on this appeal for several reasons. No motion for judgment because of the insufficiency of the evidence to sustain plaintiff's cause of action was made by the defendant at the conclusion of the evidence. Plaintiff, therefore, relies and must rely upon the rulings of the court made when it presented its special findings of fact." Since the main opinion reviewed the case on its merits, and since no further consideration was given to the point involved here, other than as quoted above, it cannot be taken to be an expression of the rule of this Circuit sufficient to overrule the direct holding in the Balaklala Case, supra.

Nor did Krumm v. Southwest Finance Co. of Calif., 9 Cir., 1933, 67 F.2d 1, change the rule of this Circuit. In that case the court refused to consider the sufficiency of the evidence to support the judgment because there was nothing in the record to show a motion for judgment, or its equivalent, and, further, because it did not appear that the motion for nonsuit (recited in the preamble to the special findings as having been made during the progress of the trial) "was based on the insufficiency of the evidence to support a finding or judgment for plaintiff or that it was made at the conclusion of all the evidence or that defendant excepted to its denial by the court." In view of the cases cited by the court (Balaklala Consol. Copper Co. v. Reardon, supra, was not noticed), it seems fair to conclude that the holding was based not upon the failure to specify the grounds for the motion, but upon one of the other mentioned points.

In Seaboard Surety Co. v. United States et al., 9 Cir., 1936, 84 F.2d 348, 351, the following language is found: "The underlying purpose of the requirement that there shall be a motion for judgment, either of nonsuit or for the defendant, on the ground of insufficiency of evidence, before it can be reviewed on appeal, is that the court shall be advised of the claim with such argument thereon as is required for its presentation. The same reason underlies a denial on appeal of a review of the sufficiency of evidence to support a judgment on a certain issue, in the absence of a request specifically made that a certain set of facts be found by the court."

This statement was offered by way of argument upon another point, and since it appears from the opinion that there was no motion for judgment, but only a request for specific findings, without any specific findings being offered, it is not authority for the point under consideration.

With the conclusion that the motion was sufficient and that consequently assignment I is proper, we shall proceed to examine the facts as to whether or not there is substantial evidence in the case to support the judgment.

The policy was delivered to the deceased, Benjamin Thomas Davis, husband of appellee, on the 1st day of July, 1931. One of the terms of the policy was as follows: "Upon failure to pay a premium when due, or upon the failure to pay any premium rate when due, this policy will become null and void without any action or notice by the company, and all rights shall be forfeited to the Company, except as hereinafter provided." One of the provisions following was: "In case of default in the payment of any premium hereunder or any premium note when due, the Company will reinstate the Policy * * * at any time upon written request by the Insured to the Company at its Home Office, accompanied by evidence of insurability satisfactory to the Company and the payment of all premium arrears and the payment or reinstatement of any indebtedness existing at the date of the default, together with interest thereon at the rate of six per cent per annum. * * *"

The insured paid all premiums due on said policy up to the monthly payments due December 1, 1934. Insured defaulted in the payment of said monthly premium and by reason thereof the policy lapsed. On January 7, 1935, insured furnished the

company with an application for reinstatement, together with the premium arrearages, and the policy was reinstated on or about January 14, 1935.

Thereafter, insured promptly paid the premiums when due, until October 1, 1935, when he again defaulted. He also defaulted as to the November premium and the policy again lapsed. On December 10, 1935, the company received from the insured a cash remittance of $10.18 to apply on the October 1, 1935, and November 1, 1935, monthly premiums of $5.09 each, and the company thereupon advised insured that said remittance was being held subject to his order, pending receipt of other requirements, i. e., application for reinstatement, and final action by the company. The account of insured with the Company was not at this time credited with this sum.

The company heard nothing from the insured until January 14, 1936. In the meantime, the monthly premium due December 1, 1935, had become due and the grace period of 31 days had expired without the premium for that month having been paid. On January 14, 1936, the company received from insured a letter inclosing an application for reinstatement of his policy, together with a check for $10.18 to cover the unpaid monthly premiums due December 1, 1935, and January 1, 1936. The check, dated January 9, 1936, was drawn by the Johnston Hotel of Richfield, Utah, on a bank of that city in favor of the company.

Four days after receipt of the check, the company deposited it with its bank for collection and, meanwhile, on January 16th forwarded to the insured two certificates of reinstatement—one covering the premiums due for October and November of 1935, and the other covering the premiums due for December, 1935, and January, 1936. A letter accompanying these certificates stated in part: "Application for reinstatement is approved. Have accepted deposit of $20.36, tendered in payment of the two, two monthly premiums. * * *"

On January 17, 1936, the company made an entry crediting Davis' account with $20.36. No segregation of the entry was made to indicate that the sum entered was the total amount of two items—the cash and the check.

On January 24, 1936, the drawer of the check notified the company that it had stopped payment thereon and on January

27th the company's bank notified it of the return of the dishonored check, whereupon the company redeemed it. On the same date the company made an entry on Davis' account that the check was not good and that the premiums thereon were paid to "12–1–35" and at the same time entered in the "Premiums Paid" column under "Amount" the figures $10.18."

The check, when drawn, was good, and if it had been presented any time before January 22, 1936, when payment was stopped, it would have been honored.[1] Davis believed the check to be good, and that it would be honored upon presentation. The maker stopped payment because he believed Davis' employer would refuse to honor any further drafts drawn on it by Davis, and that, consequently, the Johnston Hotel would not be repaid the sum so advanced.

January 29, 1936, the company wrote to insured informing him that the check had been returned unpaid, advising him of the maker's reasons for stopping payment, and concluding: "Now we realize that a misunderstanding accounts for your premiums being past due and suggest that you send us new remittance of $10.18 at once. If this matter is promptly taken care of we should have no trouble in getting your insurance back in good standing." The dishonored check was inclosed in the letter.

Apparently, this letter was received by Mrs. Davis, appellee, about the 5th of February, 1936, but was not given to the deceased until about February 10th, because he was under the influence of liquor, and though not suffering from delirium tremens was very mean when he was drinking. The letter was later found rolled in some papers in the pocket of deceased's car. It does not directly appear whether or not the insured ever read the letter, but the trial court could properly have so inferred from the fact that appellee identified a letter, without the envelope, as the letter found in the pocket of the car.

To this letter insured never replied. He died on February 14, 1936. On February 15, 1936, one David Engelke deposited the sum of $10.18 with the California managers of the company in payment of the dishonored check and received a receipt therefor. It does not appear what interim disposition of this payment was made by the California office of the company. The company did not at the time know of Davis' death, and upon learning of it ordered the sum returned. C. N. Sears, secretary of the company, testified by deposition that: "The Company first heard of the death of the insured on February 21, 1936, and it advised its attorney at Los Angeles, California, Mr. John T. Gose, to make arrangements for the return of $10.-18." At the time the Engelke deposit was accepted, the California office had in its possession a copy of the letter of January 29, 1936, from the company to the insured, and an employee of the Los Angeles office consulted this letter before the check was accepted.

It was admitted by the pleadings that appellee gave appellant due notice and proofs of the death of the insured.

The evidence is undisputed that on October 1, 1935, the policy lapsed for nonpayment of premiums. The ultimate question then becomes: Was the policy reinstated so as to be in effect at the moment of the death of the insured? The policy was not reinstated unless the conditions precedent to reinstatement were fully complied with, or, if not fully complied with, waived as to the portion not performed. "The right to reinstatement depends on the provisions of the contract, and since the right is not absolute, the insurer may impose such conditions as he sees fit, if not contrary to public policy, on which reinstatement may be had." Cooley's Briefs on Insurance, Vol. IV, p. 3777.

---

[1] There is authority that where the person to whom the check is given by the drawer and the bank on which it is drawn are situated in different places, the check must, in the absence of special circumstances, be forwarded for presentment for payment on the next business day after which it is received. 8 Am.Jur., Bills & Notes, § 671, n. citing cases. The record before us reveals that the check was received by the company on January 14th, and was not deposited for collection until January 18th. The trial court might well have inferred that, in part at least, the seeming reluctance of the company to take the position with the insured that the policy was not reinstated (see, text, post) was traceable to the uncertainty of their position due to the delay in presentment of the check.

The policy here sued upon imposed two conditions to reinstatement of a lapsed policy; written request for reinstatement, accompanied by evidence of insurability satisfactory to the company, and payment of all premium arrears. It is not disputed that the first of these conditions was performed by the insured. But were all premium arrears paid?

It is fundamental that the acceptance of a premium or an assessment after the death of the insured will not waive a forfeiture for nonpayment of premiums, if the insurer has no knowledge of the death of the insured. Cooley's Briefs on Insurance, Vol. V, p. 3958. In determining whether arrearages were paid—but not touching upon the question of waiver—we must exclude the deposit made by Engelke, for it was made to and accepted by the agency without knowledge of Davis' death.

It being equally clear that one-half of the amount of the default was paid in cash, the question then remaining is: Did the acceptance by the company of the check for $10.18 operate as a payment to it of the balance of the arrearages due it, and so complete the performance of the condition precedent to reinstatement? This question must be answered in the negative.

The law is settled that a check made in payment of insurance premiums is taken conditionally and subject to its return in cash, unless there is a special agreement that such check is received in absolute payment. Philadelphia Life Ins. Co. v. Hayworth, 4 Cir., 1924, 296 F. 339; Silverman v. New York Life Ins. Co., D.C. 1932, 2 F.Supp. 184, affirmed, 3 Cir., 1933, 66 F.2d 554. The fact that a receipt is given for payment of the premium does not change the rule. Philadelphia Life Ins. Co. v. Hayworth, supra; Silverman v. New York Life Ins. Co., supra.

There is no evidence in this case supporting a special agreement to take this check as absolute payment.

But, though the conditions precedent to reinstatement were not performed according to their terms, can it be said that there is substantial evidence from which the court could properly have found that the company waived its right to insist upon different performance than that rendered by insured in satisfaction of the condition? We hold that there is.

A waiver, which is the voluntary relinquishment of a known right, may be either express or implied. As was said in New York Life Insurance Company v. John W. Eggleston, 1877, 96 U.S. 572, 577, 24 L.Ed. 841, 843: "We have recently, in the case of Knickerbocker Life Ins. Co. v. Norton, 96 U.S. 234, 24 L.Ed. 689, shown that forfeitures are not favored in the law; and that courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or an agreement to do so on which the party has relied and acted. Any agreement, declaration or course of action, on the part of an insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract. The company is thereby estopped from enforcing the forfeiture."

See, also, Murray v. State Life Ins. Co., C.C.Pa., 1907, 151 F. 539, affirmed, 3 Cir., 1908, 159 F. 408.

However, it is true that the doctrine of implied waiver as applied to insurance is closely akin to estoppel and rests on a course of conduct of the insurer with reference to the insured, evidencing an intention not to insist on some performance due to it under the terms of the policy. Globe Mutual Life Insurance Company of New York v. Wolff, 1877, 95 U.S. 326, 24 L.Ed. 387; Astrich v. German-American Ins. Co., 3 Cir., 1904, 131 F. 13, 20; Bakhaus et ux. v. Germania Fire Ins. Co., 4 Cir., 1910, 176 F. 879, 883; Massachusetts Mutual Life Ins. Co. v. Mayo, 9 Cir., 1936, 81 F.2d 661, 664. What evidence is present in the instant case of conduct on the part of the company from which the court could have found that the insured was led to believe that it was the intention of the company to keep the insurance effective pending settlement of the check episode which the company referred to as a "misunderstanding"?

Such evidence may be found in the letter of date January 16th, with its inclosed certificates of reinstatement, and the letter of January 29, 1936, without such inclosures. In the first of these communications it was stated: "Application for reinstatement is approved. Have ac-

cepted deposit of $20.36, tendered in payment of the two, two monthly premiums. * * * " The accompanying certificates of reinstatement were absolute in form: "Received * * * delinquent two months Premium * * * the payment of which reinstates said Policy. * * * " This communication may have induced insured to believe that his arrears had been fully paid. With this thought in mind, we look to the letter of January 29th. What indication does it give as to whether or not the insurance was effective?

In considering the effect of this letter, it must be remembered that on two prior occasions the insured had been informed that he would be required to furnish evidence of insurability, as well as to pay delinquent premiums, before the company would reinstate the policy which had been allowed to lapse, and it must be noted that the company did not return to insured the cash payment of $10.18 which he had earlier deposited to apply on premiums. Nor did the company say that it was holding this sum pending remittance of money to pay the premium arrearages. Whereas earlier in the course of dealings and immediately after the $10.18 cash was received by the company and when nothing remained to be done but to send in the application for reinstatement, the company did state specifically it would be held "subject to your order, pending receipt of other requirements, and final action by the Company." In the light of these facts, can it be said that this letter which did not state to insured that his policy remained lapsed; which made no reference to the certificates of reinstatement, either by way of statement of cancellation or request for their return or otherwise; which did not state that on the payment of a new remittance, the policy would be reinstated; and which made no requirement as to the furnishing of evidence of insurability; was sufficiently unambiguous to correct the belief in the mind of the insured that the policy was in effect? Might not the insured more reasonably have implied therefrom that the policy remained effective, but that by reason of the check failure, a sum was due the company to reimburse it in the amount of the check? We feel that the trial court could properly have so found.

We have noted that the letter suggested the sending of a "new remittance at once" and qualified the statement that the insurance could be put back in good standing by the antecedent phrase, "If this matter is promptly taken care of." However, the evidence shows that this letter could not have been read by insured prior to February 10th (although it came into the possession of the beneficiary five days earlier), and he died but four days later—the intervening period would not constitute an unreasonable delay had it been read and understood as meaning that the continuation of the insurance depended upon the sending of money to cover the check within a reasonable time. Such inferences could have been properly made by the trial court.

Proceeding upon the assumption that waiver must be based on the intentional relinquishment of a right, we find evidence that the company intended to carry the policy in force for at least a reasonable time during which money could be sent to cover the dishonored check. Such evidence is found in the fact that the company, upon the return of the check, instead of canceling the previously entered credit of $20.36, and transferring the $10.18 deposit to a special account, pending receipt of the balance due, made an entry on its books showing premiums paid to December 1, 1935, and retained the cash (the retention being unaccompanied by any intimation that the company regarded the sum as returnable to the insured) given in payment of the October and November premiums. If the company had not intended to continue the policy in force, why did it retain this cash which could not otherwise have done the insured any good, and to which the company could not have believed itself entitled if at the time it did not consider the policy in full force and effect?

It also appears to us, in the light of the full circumstances surrounding the transaction of the Engelke payment, that the retention of this money by the company (or its agent) until it heard of insured's death, without requiring the usual application for reinstatement, further justifies the conclusion that the policy was, in fact, in full force and effect, and that the company in refusing to honor the policy sought to avoid the result of its own waiver of conditions precedent to its policy obligations.

Affirmed.

DENMAN, Circuit Judge.

I concur. It is true that the dishonor of the check leaves the parties in the status

quo ante and that only what is done consciously after the company knows of the dishonor can be considered as an estoppel to deny the continuing insurance, despite the nonpayment of premiums. The letter of January 29, 1936, does contain such an estoppel.

When the insured, on December 11, 1935, sent $10.18, which would pay his premiums to December 1, 1935, the company refused to accept it as payment because the insured failed to comply with other policy provisions for reinstatement. It held the money "subject to the order" of the insured. Hence up to the receipt of the dishonored check, on January 16, 1936, the policy was lapsed.

Unpaid premiums are not debts of the insured. Payment is no more than the performance of a condition precedent to the continuance of the insurance. Hence the insured did not owe the company the $10.18 on the premiums payable on or before December 1, 1935. If, before January 1, 1936, the company had applied the $10.18, which it held subject to insured's order, to the premiums due on December 1, 1935, the grace period of 31 days would have extended the policy only to January 1, 1936.

Under the terms of the policy so to apply them after January 1, 1936, would not revive it. As pointed out, the insured ·did not owe the premiums as a debt to the insurer. Hence such an application of the moneys, held to the order of the insured, after ·January 1, 1936, to premium payments, is a wrong done the insured, unless deemed applied to a then existing policy.

The letter of January 29, 1936, after the company knew of the dishonored check, states to the insured that the premiums were paid "to December 1, 1936." He was therefore entitled to assume from the acceptance for the payment of past premiums after January 1, 1936, of his money, declared by the company to be held theretofore only "to his order," that the company has waived the nonpayment of the January 1st premium and continued the policy until he had time to repair the "mistake" of the dishonored check. Since he could assume it from the company's letter, the company is estopped to deny it.

In any event, this is sufficient evidence from which the jury could have made such an inference, and the judgment should be affirmed.